BUCHALTER
A Professional Corporation
WILLMORE F. HOLBROW III (SBN: 169688)
    wholbrow@buchalter.com
MATTHEW L. SEROR (SBN:  235043)
    mseror@buchalter.com
SEAN M. CASEY (SBN: 179641)
    scasey@buchalter.com
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA  90017
Telephone: 213.891.0700

BUCHALTER
A Professional Corporation
DYLAN WISEMAN (SBN: 173669)
    dwiseman@buchalter.com
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Tel: (415) 227-3546

Attorneys for Plaintiffs JERRY A. SPOLAR
and TONNY JILL WILLIAMSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY A. SPOLAR, an individual; and TONNY JILL WILLIAMSON, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> DISCOVERY COMMUNICATIONS, LLC, a Delaware limited liability company; UNREALISTIC IDEAS, LLC, a Delaware limited liability company; PIECE OF WORK PRODUCTIONS, LLC, a California limited liability company; ARCHIE GIPS, an individual; WHITNY BRAUN, an individual; JAMES BRAUN, an individual; and DOES 1 through 25, <br><br> Defendants. | Case No. 2:20-cv-8837 <br><br> **COMPLAINT FOR:** <br><br> **(1) BREACH OF CONTRACT;** <br> **(2) VIOLATION OF THE DEFEND TRADE SECRETS ACT;** <br> **(3) UNFAIR COMPETITION** <br><br> **DEMAND FOR JURY TRIAL** |

This is a dispute about the Defendants' unauthorized use of Plaintiffs' life's work over 24 years to obtain, authenticate, and establish the provenance for what is the 131st and last photographic image of President Abraham Lincoln alive, which was taken on his death bed.   Defendants have conspired to use confidential and trade secret information obtained from Plaintiffs, subject to Non-Disclosure Agreements, to create an unauthorized documentary, which is scheduled to air on The Discovery Channel in early October, 2020.

Plaintiffs for their Complaint allege as follows:

## JURISDICTION & VENUE

1.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 insofar as this case arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836.  This Court has supplemental jurisdiction over the remaining claims alleged herein pursuant to 28 U.S.C. § 1367.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) insofar as a substantial portion of the events or omissions giving rise to the claims alleged herein occurred in the Central District of California.

## THE PARTIES

3.      Plaintiff Tonny Jill Williamson ("Williamson") is an individual and a resident of St. Augustine, Illinois.

4.      Plaintiff Jerry A. Spolar ("Spolar") is an individual and a resident of Putnam, Illinois.

5.      Defendant Discovery Communications, LLC ("Discovery") is a limited liability company organized and existing under the laws of the state of Delaware with a principal place of business of One Discovery Place, Silver Springs, Maryland 20910.  Discovery is qualified to do business in the state of California and Plaintiffs are informed and believe, and on that basis allege, that Discovery operates and conducts business in this judicial district.

6.      Defendant Unrealistic Ideas, LLC ("Unrealistic") is a limited liability company organized and existing under the laws of the state of Delaware with a principal place of business of 901 West Alameda Avenue, Suite 102, Burbank, California 91506.  Unrealistic is qualified to do business in the state of California and Plaintiffs are informed and believe, and on that basis allege, that Unrealistic operates and conducts business in this judicial district.

7.      Defendant Piece of Work Productions, LLC ("PWP") is a limited liability company organized and existing under the laws of the state of California with a principal place of business of 901 West Alameda Avenue, Suite 102, Burbank, California 91506.  PWP is qualified to do business in the state of California and Plaintiffs are informed and believe, and on that basis allege, that PWP operates and conducts business in this judicial district.

8.      Defendant Whitny Braun ("W. Braun") is an individual who, upon information and belief is a resident of Downey, California.

9.      Defendant James Braun ("J. Braun") is an individual who, based on Plaintiffs' information and belief is a resident of Downey, California.

10.     Defendant Archie Gips ("Gips") is an individual who, based on Plaintiffs' information and belief is a resident of Los Angeles, California.

11.     Plaintiffs are informed and believe and thereon allege that Defendants DOES 1 through 25, inclusive, are other as of yet unidentified parties who have participated in and committed the wrongful acts alleged herein. The true names of Defendants 1 through 25 are presently unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint with their true names and capacities once ascertained.

12.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant hereto each of the Defendants was the agent, employee, alter-ego, affiliate, officer, director, manager, and/or principal of the other Defendants and

1  was at all times relevant hereto acting within the course and scope of such agency

2  relationship, employment, alter-ego relationship or affiliation.

3       13.    Plaintiffs are informed and believe, and based thereon allege, that each

4  Defendant actively participated in, or subsequently ratified, each of the acts and

5  conduct alleged herein with full knowledge of all the facts and circumstances

6  attendant thereto, including the rights of the Plaintiffs and the damage to be

7  sustained by Plaintiffs as a result of the acts and conduct alleged herein.

8  **FACTUAL BACKGROUND**

9       14.    Plaintiffs are the owners of an ambrotype photograph that is believed

10  to be a long lost photograph of Abraham Lincoln ("Lincoln Ambrotype"), the 16th

11  president of the United States. An ambrotype is a type of photograph employed in

12  the 1860s, which is taken on glass, sometimes ruby glass, which uses a light-

13  sensitive silver colloid emulsion spread on the glass to capture and preserve a

14  photographic image thereon.

15       15.    There are only 130 known and authenticated photographs of President

16  Lincoln. The Plaintiffs' Lincoln Ambrotype is the 131st, and was taken the night

17  President Lincoln lay mortally wounded after he had been shot by John Wilkes

18  Booth.

19       16.    Plaintiff Spolar acquired the Lincoln Ambrotype on December 8, 1996

20  from individuals who had purchased it from a well-advertised estate auction sale of

21  Hanks (Lincoln) memorabilia on August 29, 1996. In the intervening decades since

22  December1996, Plaintiffs traveled down their long road of authenticating the

23  provenance of the Lincoln Ambrotype, and obtained notarized statements and/or

24  sworn affidavits attesting to Plaintiffs' ownership and other important historical

25  details regarding the Lincoln Ambrotype's ties to the Lincoln descendants.

26       17.    During the ensuing 24 years, Plaintiffs Spolar and Williamson have

27  consulted, worked with, and hired dozens of experts around the United States to

28

examine forensically and authenticate the Lincoln Ambrotype and its historical provenance.

18.    Plaintiffs' intense and unrelenting efforts amount to a lifetime of work and due diligence, and have cost hundreds of thousands of dollars and thousands of hours of time. This time and money was invested in interviews, examinations, tests, experiments, and travel time to develop a comprehensive historical analysis of the facts and circumstances surrounding the technology, creation, and lineage of the Lincoln Ambrotype.

19.    At every turn, Plaintiffs were diligent and careful to ensure that all those who came into contact with them and the Lincoln Ambrotype understood that Plaintiffs intended to keep their work secret and confidential at all times. Plaintiffs intended to maintain this confidentiality until such time as they were satisfied that they had succeeded in establishing, by scientific evidence, that the Lincoln Ambrotype was in fact the last known and surviving photograph of President Lincoln alive.

20.    In connection with their investigation and analysis, and before meaningfully discussing their work or the Lincoln Ambrotype with any third party, Plaintiffs insisted that each such party execute a non-disclosure agreement ("NDA"), and/or a confidential work-for-hire agreement, to memorialize a clear and unequivocal understanding that their work and all work product created would be confidential and Plaintiffs' sole and exclusive property, without reservation.

21.    As their work progressed, Plaintiffs developed an extensive network of forensic, authentication, technology, historical, and medical experts, who, after signing Plaintiffs' confidentiality agreement, embraced these efforts, and spurred Plaintiffs on through the years. Plaintiffs' network included a confidential list of dozens of medical, forensic, and authentication experts.

22.    The Plaintiffs' confidential work product also included many detailed reports, analyses, and conclusions, scientific analytical drawings, annotated images

and overlays of the Lincoln Ambrotype and features thereon, experimental procedures and results, and related expert and consultant write-ups. Plaintiffs' assembly of these works resulted in scores of materials, and which comprised Plaintiffs' authentication, forensic, and provenance roadmap of their journey in investigating the technology and history of the Lincoln Ambrotype.

23.    In addition, Plaintiffs also accumulated volumes of handwritten notes, annotated figures and images, and detailed notes of their interactions with their core team of collaborators, as well as the many others they worked with over the 24-year sojourn in establishing the provenance of the Lincoln Ambrotype.

24.    Further, Plaintiffs have also commissioned their experts to create images of their Lincoln Ambrotype using various duplication technologies, for use in, and to enable, more detailed analyses of various photogrammetric and other aspects of the Lincoln Ambrotype.

25.    Plaintiffs also obtained notarized, authenticating provenance statements from a prior owner of the Lincoln Ambrotype, with knowledge of Lincoln memorabilia, further confirming Plaintiffs' ownership of the Lincoln Ambrotype and evidencing its authenticity.

26.    So too did Plaintiffs commission their experts to create a duplicate copy of the Lincoln Ambrotype, using photographic techniques identical to those used in April 14, 1865, when the original ambrotype was created.

27.    Plaintiffs' experts and consultants signed and agreed to abide by their respective NDAs and/or confidential work-for-hire agreements, and to deliver all work product to the exclusive custody, possession, and control of Plaintiffs when completed.

28.    This work product, and the information that Plaintiffs accumulated over the 24-year period, including without limitation, the information identified in the preceding paragraphs, was maintained as confidential trade secrets by Plaintiffs

("Confidential Information"). All such Confidential Information was retained by and is owned by Plaintiffs.

29.     At all times during the 24-year span, the Plaintiffs ensured that the Confidential Information was maintained as confidential and the Lincoln Ambrotype never left their control.

30.     Plaintiffs ensured that their collaborators released and delivered to Plaintiffs all pre-existing and newly created work product, and that such third parties were not to retain anything related to the Lincoln Ambrotype.

31.     Towards the end of this 24-year span of time, Plaintiffs came to realize they had succeeded. After more than two decades of intense investigation, study, accumulation of data, and scientific analyses, they were ready to share their results publicly in a way they were able to control.

32.     Plaintiffs reached out first to the National Geographic Channel to discuss the possibility of making a documentary highlighting their journey and the now well-established provenance of the Lincoln Ambrotype. Through their extensive network, and eager to meet people to discuss their plans, Plaintiffs were also referred to W. Braun, the daughter of firearms historian and gunsmith. J. Braun, who both executed Plaintiffs' NDA.

33.     Plaintiffs also learned that W. Braun had some exposure to a documentary related to the authentication of a photograph of Billy the Kid. While that effort had very limited exposure, when Plaintiffs contacted her, Defendant W. Braun was enthusiastic over the telephone. That enthusiasm continued during subsequent correspondence.  W. Braun indicated she had an existing relationship with Unrealistic, a documentary film production company.

34.     The conversations led Plaintiffs to a schedule a brief trip to California from their home in Illinois, to visit with W. Braun and her colleagues at Unrealistic. Prior to the meeting, Gips the President of Unrealistic, W. Braun, J. Braun, and others signed the NDA.  At this February 16, 2018 meeting, W. Braun, J. Braun,

and Unrealistic were shown some of Plaintiffs' confidential information, including part of a detailed presentation describing their twenty-plus year research journey and their plans for a documentary.

35.     During the February 16, 2018 meeting, Plaintiffs met with W. Braun, her father J. Braun, and Unrealistic's President.  Plaintiffs set up their laptop to begin their planned presentation, which detailed aspects of their extensive authentication odyssey.   During the course of their presentation, subject to the NDA, Plaintiffs identified several of their authenticating experts.

36.     After only a short time, and well before Plaintiffs would have finished their presentation, Defendant Gips interrupted and informed Plaintiffs that they had to move the meeting to another office in order to present the same to National Geographic representatives from New York, via video conference, namely to National Geographic's then executive producer, Igal Svet ("Svet").  Svet also agreed by email to protect the confidentiality of Plaintiffs' information.

37.     During their meetings in Los Angeles, Plaintiffs explained that all of their information related to the Lincoln Ambrotype was confidential, including for example, the names of and work done by Plaintiffs' many experts and consultants. Upon returning to Illinois after their brief visit to Los Angeles, Plaintiffs continued in good faith to interact with Defendants Gips, W. Braun, J. Braun, and their colleagues at Unrealistic.

38.     Shortly after returning to their home in Illinois on or about February 20, 2018, Plaintiffs were shocked to receive a message from Defendant W. Braun asking for verification of a typed list of Plaintiffs' experts and consultants rife with errors, which W. Braun had misappropriated from Plaintiff Williamson's materials during the Los Angeles visit.

39.     Williamson admonished W. Braun for creating it, and for return of the materials. Williamson deduced that W. Braun must have reduced it to writing without permission during the Los Angeles meeting. Williamson expressly

reminded W. Braun of the signed NDA, and that she was obligated to return and/or destroy the list, was not to keep it, was not to use it for any purpose, and was not to contact Plaintiffs' experts without advance permission. The list was never returned.

40. A few weeks later, Defendants W. Braun, J. Braun, and Gips informed Plaintiffs that National Geographic was not interested in the project. However, they proposed meeting with the History Channel to present Plaintiffs' project to then History Channel executive producers Sean Boyle ("Boyle") and Kristen Burns ("Burns"), in Chicago in June 2018.

41. Plaintiffs traveled to Chicago and obtained signed NDAs from each of these History Channel representatives, and from another Unrealistic representative Paul Sadowski, before presenting their project, which was well received, according to all participants.

42. After returning home, Plaintiffs' received an offer from Defendant Unrealistic's representative Jessica Navarro, for a mere $2,000. This offer fell far short of their expectations, in view of Unrealistics' own written assertions that the proposed History Channel project was worth "7-digits." This low offer from Unrealistic was especially offensive given all of the time, resources, and money expended by Plaintiffs' during the preceding many years. Consequently, Plaintiffs rejected the unreasonable offer.

43. Thereafter, in August 2018, Defendants Unrealistic, Gips, W. Braun, and J. Braun, and others at Unrealistic communicated to Plaintiffs that the History Channel was not interested in the project, and that Defendants Gips and Unrealistic had "pulled the plug," even though the Plaintiffs' signed Artists Holding Agreement with Unrealistic had yet to expire.

44. Despite Defendants' claims regarding the lack of interest in the Lincoln Ambrotype project, Plaintiffs began to receive word from their extensive network of experts, historians, and collaborators that one or more of Defendants Discovery, Gips, J. Braun, W. Braun, Unrealistic, PWP, Boyle, Svet, and their

1   agents and or others were contacting other of Plaintiffs' many experts and

2   collaborators.

3       45.    Unknown to Plaintiffs at that time, during October 2018, Boyle left

4   The History Channel and moved to Defendant Discovery in an executive producer

5   role. Upon further information and belief, Svet left National Geographic and joined

6   Defendant Discovery in May 2019, also in an executive producer role and to work

7   with Boyle.

8       46.    Other than disclosures pursuant to the NDAs, Plaintiffs' experts and

9   collaborators were known only to Plaintiffs. Many of such individuals were listed

10   in Plaintiffs' confidential list that Defendant W. Braun misappropriated in the

11   February meeting in Los Angeles.

12       47.    Upon learning that W. Braun posted confidential information online,

13   continued to make contact with and may have even filmed activities with one or

14   more of Plaintiffs' confidential network of experts and collaborators, Plaintiffs sent

15   a cease and desist letter dated August 2, 2019 to Defendants Unrealistic and W.

16   Braun. See Ex. A.

17       48.    Defendants Unrealistic and W. Braun failed to respond to the letter. As

18   Plaintiffs' network uncovered and shared additional information, it became

19   apparent that Defendants had ignored the cease and desist demand and continued to

20   secretly make contact with Plaintiffs' experts.

21       49.    Plaintiffs tried in earnest to piece together conversations and

22   information received from their many experts and collaborators, and Plaintiffs were

23   informed, and on that basis believed, that W. Braun continued to work on filming in

24   violation of her NDA, and was potentially working with Discovery.

25       50.    On or about January 21, 2020, Plaintiff caused another cease and desist

26   letter to be sent to W. Braun, and this time, also sent a courtesy copy to Discovery.

27   See Ex. B.

28

51.     After confirming from their network and publicly available sources, Plaintiffs were informed and on that basis believed, that Boyle and Svet had moved to Discovery, and were likely colluding with one or more Defendants, in continuing violations of Plaintiffs' rights.

52.     Consequently, Plaintiffs caused another cease and desist letter dated April 3, 2020 to be communicated to Boyle at Discovery. See Ex. C.

53.     Counsel for Discovery responded, refusing to confirm or deny that any production was in the works regarding Plaintiffs' property and confidential materials, and asserted that Boyle was not involved in any such project.

54.     On September 14, 2020, Discovery announced the airing of new documentary titled, "Discovery Presents Hidden Photo of Lincoln" or "Undiscovered: The Lost Lincoln," focused on the Lincoln Ambrotype, starring W. Braun. The production is scheduled to be broadcast on or about October 4, 2020 at 9 P.M. Eastern Time on The Discovery Channel, which is owned and operated by Defendant Discovery.

55.     The announcement included a trailer, relating to the Lincoln Ambrotype. See announcement attached hereto as Ex. D.

56.     In reviewing Discovery's announcement and the video trailer, Plaintiffs discovered the scope and breadth of Defendants' unscrupulous conduct and confirmed Defendants' breach of their NDAs and misappropriation of trade secrets.

57.     Moreover, upon information and belief, Discovery employed Boyle and Svet (who were both subject to an NDA) while this Lincoln Ambrotype documentary was being made.  Discovery was put on further notice of Plaintiffs' proprietary interests, at least as early as January 2020 via a cease and desist letter. Discovery's decision to produce and display the documentary was a knowing and willful violation of Plaintiffs' rights.

58.     Elements of the announcement and/or video trailer could have only been obtained from Defendants in violation of the above agreements.

59.     The broadcast of the October 4, 2020 documentary will cause irreparable harm to the Plaintiffs' property and the value thereof, including confidential, proprietary, and trade secret work product created over the last 24 years. Historical errors in the trailer if propagated to the broadcast will cause further irreparable harm.

60.     Attached hereto as Exhibit E are copies of signed NDAs, that are part of a larger collection of NDAs, emails, & work-for-hire agreements evidencing Defendants' duty of confidentiality owed to Plaintiffs, which Defendants have violated in breach of Plaintiffs' contract rights.

## **FIRST CLAIM FOR RELIEF**

## **(Violation of the Defend Trade Secret Act of 2016 - 18 U.S.C. § 1831, *et seq.* – Against All Defendants)**

61.     Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 60 as if fully set forth herein.

62.     Plaintiffs are the owners of the Confidential and Trade Secret Information, described in paragraphs 17 – 27 above and elsewhere.

63.      Plaintiffs derive substantial potential economic value from the Confidential and Trade Secret Information not being readily ascertainable through proper means.   Plaintiffs have engaged in advanced discussions with third parties regarding the potential exploitation of the Confidential and Trade Secret Information, including, but not limited to, the use of the Confidential and Trade Secret Information in connection with a documentary or other program regarding Abraham Lincoln.  The contemplated documentary or program is intended to be broadcast throughout the United States and internationally.

64.     Plaintiffs have taken reasonable steps to protect the confidentiality of their Confidential and Trade Secret Information by, among other things, restricting

access to the Confidential and Trade Secret Information and requiring those individuals afforded access to said information to sign confidentiality, non-disclosure agreements.

65. Defendants have misappropriated the Confidential and Trade Secret Information in an unlawful and improper manner as detailed more fully herein.

66. Defendants took active measures to conceal their misappropriation of the Confidential and Trade Secret Information through the use of covert meetings, by instructing third parties to conceal their communications with Defendants from Plaintiffs, and by failing to be upfront regarding the use of the Confidential and Trade Secret Information.

67. In addition to an award of damages, Plaintiffs seek injunctive relief to protect the Confidential and Trade Secret Information. These materials are vital to Plaintiffs' business and their efforts to maintain their economic advantage over competitors. Plaintiffs will suffer irreparable harm absent injunctive relief.

68. Defendants' misappropriation of the Confidential and Trade Secret Information has caused and will continue to cause Plaintiffs significant injury, including, but not limited to actual damages, harm to their reputation, lost profits, and the diminution of the value of their Confidential and Trade Secret Information and items related thereto.

69. Plaintiffs are informed and believe, and based thereon allege, that Defendants have been unjustly enriched as a result of their misappropriation of the Confidential and Trade Secret Information.

70. Plaintiffs are informed and believe, and based thereon allege, that Defendants' misappropriation of the Confidential and Trade Secret Information was intentional, willful, knowing, deliberate, fraudulent, malicious, oppressive, and undertaken in bad faith. As a result, Plaintiffs are entitled to exemplary damages and attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(C) and (D).

## SECOND CLAIM FOR RELIEF

## (Breach of Contract – Against Unrealistic, Gips, W. Braun, J. Braun and DOES 1-10)

71.     Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 70, as if fully set forth herein.

72.     On or about the noted dates on the attachments to Exhibit E, Plaintiffs and Defendants Unrealistic, Gips, W. Braun, J. Braun, and others, including Svet, and Boyle, entered into NDAs and/or work-for-hire agreements ("Agreements"), designed to restrict the use and exploitation of the Confidential Information. See Exhibit E.

73.     These Agreements contained various provisions and covenants, which detailed actions that Defendants, respectively, were precluded: retaining for their own benefit certain work product owned by Plaintiffs, and disclosing and sharing certain facts disclosed to them by the Plaintiffs.  The Agreements, among other prohibitions, specifically provided that Defendants:

      a.  Shall not disclose or permit access to Confidential Information";

      b.  Shall take all steps necessary to protect the secrecy of the Confidential Information;

      c.  Not use the … Confidential Information;

      d.  Immediately notify … of any unauthorized disclosure;

      e.  Fully cooperate with the Disclosing Party in any effort undertaken … to enforce its rights.

74.     The Agreements were executed by Plaintiffs and Defendants Unrealistic, Gips, W. Braun, J. Braun, and others, including Svet, Boyle, M. Osterman, F. Osterman, Hager, and Burns, respectively.

75.     The Agreements are valid and enforceable contracts.

76. Plaintiffs have satisfied all of their obligations under the respective Agreements except those obligations that were excused as a result of the Defendants' breaches.

77. The noted Defendants breached the Agreements when (s)he/it committed the acts set forth herein.

78. As a direct and proximate result of Defendants' respective breaches of the Agreements, Plaintiffs has suffered damages.

## FIFTH CLAIM FOR RELIEF

### (Unfair Competition – Against All Defendants)

79. Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 78 as if fully set forth herein.

80. By retaining and using Plaintiffs' Confidential and Trade Secret Information as set forth herein, Defendants have unfairly competed with Plaintiffs.

81. Defendants have compromised the confidentiality of the Confidential and Trade Secret Information, have undermined (or attempted to undermine) Plaintiffs' competitive advantage, and caused, and are continuing to cause, Plaintiff to sustain harm and damage.

82. Among other things, Defendants' conduct, as alleged herein, has deprived Plaintiffs of the opportunity to maximize the value of their Confidential and Trade Secret Information by launching a competing documentary using the Confidential and Trade Secret Information.

83. The conduct of the Defendants as set forth herein constitutes acts of unfair competition in violation of California Business and Professions Code § 17200, et seq.

84. As a direct and proximate result of Defendants' unfair competition, they have been unjustly enriched in an amount not yet ascertained.

85. As a direct and proximate result of Defendants' unfair competition in violation of California Business and Professions Code, Sections 17200, et seq.,

Plaintiffs have suffered, and will continue to suffer, substantial and irreparable harm.  Plaintiffs are informed and believe, and based thereon allege, that Defendants still possess the Confidential and Trade Secret Information and will continue to engage in acts of unfair competition unless enjoined and restrained.

## **PRAYER FOR RELIEF**

Therefore, Plaintiffs pray for judgment against Defendants as follows:

**On Plaintiffs' First Cause of Action:**

1.     That the Court issue a preliminary and permanent injunction against Defendants enjoining the actual or threatened misappropriation of Plaintiffs' Confidential and Trade Secret Information, and enjoining the Defendants from continuing to use, retain and misappropriate Plaintiffs' Confidential and Trade Secret Information, including without limitation enjoining the airing of Discovery's documentary on the Lincoln Ambrotype;

2.     For an order requiring Defendants to return to Plaintiffs all of the Confidential and Trade Secret Information in their possession, custody, or control, including all physical and electronic copies of same;

3.     That Plaintiffs be awarded damages for the actual loss caused by Defendants' misappropriation;

4.     That Plaintiffs be awarded damages for any unjust enrichment caused by the misappropriation;

5.     That Plaintiffs be awarded, at their option, damages measured by imposition of a reasonable royalty in favor of Plaintiffs for the Defendants' unauthorized disclosure and use of the Plaintiffs' Confidential and Trade Secret Information;

6.     That Plaintiffs be awarded exemplary damages, in an amount two times the amount of other damages awarded to Plaintiffs, based on Defendants' willful and malicious acts of misappropriation;

7.     That Plaintiffs be awarded their reasonable attorney's fees and costs based on Defendants' willful and malicious acts of misappropriation;

**On Plaintiffs' Second Cause of Action:**

8.     That Plaintiffs be awarded damages to compensate them for Defendants' respective breaches of the Agreements;

9.     For the issuance of a preliminary and permanent injunction against Defendants enjoining them from violating their respective contractual obligations to Plaintiffs;

**On Plaintiffs' Third Cause of Action:**

10.     That Defendants be ordered to disgorge all profits and financial gains received as a result of the acts and conduct alleged herein;

11.     For the issuance of a preliminary and permanent injunction against Defendants enjoining them from continuing their acts of unfair competition;

**On All of Plaintiffs' Causes of Action:**

12.     That Plaintiffs be awarded pre-judgment and post-judgment interest;

13.     That Plaintiffs be awarded the costs of this Action and reasonable attorney's fees; and

14.     For such other and further relief as the Court deems just and proper.


DATED:  September 25, 2020          BUCHALTER
                                    A Professional Corporation



                                    By:   */s/Willmore F. Holbrow III*
                                          WILLMORE F. HOLBROW III
                                          DYLAN WISEMAN
                                          MATTHEW L. SEROR
                                          SEAN M. CASEY
                                          Attorneys for Plaintiffs

## **JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury on all issues so triable in this matter.

DATED:  September 25, 2020          BUCHALTER
                                                        A Professional Corporation


                                                        By:    */s/Willmore F. Holbrow III*
                                                        WILLMORE F. HOLBROW III
                                                        DYLAN WISEMAN
                                                        MATTHEW L. SEROR
                                                        SEAN M. CASEY
                                                        Attorneys for Plaintiffs

# EXHIBIT A

*Schiff*
Hardin

Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL  60606

T 312.258.5500
F 312.258.5600

schiffhardin.com

David C. Blickenstaff
(312) 258.5637
dblickenstaff@schiffhardin.com

August 2, 2019

Whitny Braun
7102 Rio Flora Place
Downey, CA  90241-2028
whitny@whitnybraun.com

Unrealistic Ideas, LLC
4303 W. Verdugo Avenue, Unit 101
Burbank, CA  91505

Re:     Demand To Cease and Desist Disclosure of Confidential Information

To Whom It May Concern:

Our firms represent Tonny J. Williamson and Jerald A. Spolar, respectively.  The purpose of this correspondence is to remind you of your continuing obligations under your Nondisclosure Agreement with Dr. Williamson and Dr. Spolar, a copy of which we have attached to this letter (the "NDA").

Under the NDA, Dr. Williamson and Dr. Spolar agreed to share with you certain confidential information related to their glass plate photograph of Abraham Lincoln (the "Ambrotype").  In return for receiving this information, you agreed that you would "not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of" Dr. Williamson and Dr. Spolar.  The NDA defines "Confidential Information" to mean "all non-public, proprietary or confidential information relating to [the Ambrotype] and all proprietary research, documents, writings, photographs, images and evidence" related to the Ambrotype and its history.

You appear to have disclosed Confidential Information in violation of this agreement.  Specifically, it appears that you have been in contact with Larry Davis and/or his attorney and that you disclosed Confidential Information as part of preparing an affidavit for use in a lawsuit he filed.  Furthermore, our client has learned that you have posted certain articles and news clippings under the user name WhitnyBraun69 on a public website, www.newspapers.com.  These articles reflect Dr. Spolar and Dr. Williamson's research, work product, and intellectual property, which they shared with you under the NDA.  By disclosing this Confidential Information to the public, you have violated the agreement.



*Schiff*
Hardin

Whitny Braun
Unrealistic Ideas, LLC
August 2, 2019
Page 2

Dr. Williamson and Dr. Spolar take seriously protecting the Confidential Information and ensuring compliance with the NDA you signed.  Accordingly, they demand that you immediately cease and desist from any further disclosure of the Confidential Information, including to people identified on the list of contacts Dr. Williamson and Dr. Spolar provided to you.  Please take down the postings on www.newspapers.com along with any other public postings, and please promptly retract any other dissemination of the Confidential Information.

Dr. Williamson and Dr. Spolar reserve all of their rights and remedies against you, and any person or entity that might induce your breach of, or otherwise interfere with, your duties to Dr. Williamson and Dr. Spolar.

Please contact us if you have any questions regarding this letter.

Yours truly,

David C. Blickenstaff
Counsel for Tonny J. Williamson

/s/ Steven A. Wakeman
Steven A. Wakeman
Counsel for Jerald A. Spolar

Attachment

# EXHIBIT B

Buchalter
A Professional Corporation
Irvine

**EXHIBITS TO COMPLAINT**



A T T O R N E Y S   A T   L A W
4450 N Prospect Rd, Peoria Heights, IL 61616 • (309) 723-8585 • dmerkley@merkleyshields.com

January 21, 2020

Whitny Braun
7102 Rio Flora Place
Downey, CA  90241-2028
whitny@whitnybraun.com

Re:     Demand to Cease and Desist Disclosure of Confidential Information

To Whom It May Concern:

I am an attorney writing on behalf of Dr. Jerry Spolar and Dr. Tonny Williamson. The purpose of this correspondence is to remind you of your continuing obligations under your Nondisclosure Agreement with Dr. Williamson and Dr. Spolar, a copy of which we have attached to this letter (the "NDA").

Under the NDA, Dr. Williamson and Dr. Spolar agreed to share with you certain confidential information related to their glass plate photograph of Abraham Lincoln (the "Ambrotype"). In return for receiving this information, you agreed that you would "not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of" Dr. Williamson and Dr. Spolar.  The NDA defines "Confidential Information" to mean "all non-public, proprietary or confidential information relating to [the Ambrotype] and all proprietary research, documents, writings, photographs, images and evidence" related to the Ambrotype and its history. Further, if you have maintained any notes or documents relating to the glass plate ambrotype of Abraham Lincoln or the tutorials of night wet-plate photography or use of magnesium in night photography, please return those items to my office as required pursuant to your agreement with Dr. Spolar and Dr. Williamson.

We have learned through sworn testimony that Dr. Spolar's and Dr. Williamson's Confidential Information has been disclosed for purposes of filming a production that we understand is to be aired on the Discovery Channel. The disclosure of this Confidential Information is a direct violation of the NDA and subjects the disclosing parties to possible damages and injunctions. Further, pursuant to the NDA, you have an obligation to return all notes and documents received or created regarding the Confidential Information. Please return all such documents to Dr. Williamson and Dr. Spolar by mailing them to my office.

Dr. Williamson and Dr. Spolar take seriously protecting the Confidential Information and ensuring compliance with the NDA you signed.  Accordingly, they demand that you immediately cease and desist from any further disclosure of the Confidential Information, including to people identified on the list of contacts Dr.

BUCHALTER   **EXHIBITS TO COMPLAINT**
A PROFESSIONAL CORPORATION
IRVINE

Williamson and Dr. Spolar provided to you.  Please halt production, airing, or other publication of any Confidential Information, and please promptly retract and refrain from any other dissemination of the Confidential Information.

Dr. Williamson and Dr. Spolar reserve all of their rights and remedies against you, and any person or entity that might induce your breach of, or otherwise interfere with, your duties to Dr. Williamson and Dr. Spolar.

If you have any questions, comments, or would like to discuss this matter further, please do not hesitate to contact me.

Very truly yours,

MERKLEY & SHIELDS, LLC

Dennis E. Merkley
dmerkley@merkleyshields.com

Attachment

Cc: Discovery Communications, Inc. – Legal Department
   One Discovery Place
   Silver Spring, MD 20910

6

# EXHIBIT C

BUCHALTER **EXHIBITS TO COMPLAINT**
A Professional Corporation
IRVINE

From: dmerkley@merkleyshields.com
Subject: Re: Abraham Lincoln Ambrotype - Dr. Tonny Williamson and Dr. Jerry Spolar
Date: April 9, 2020 at 1:07 PM
To: Leah Montesano Leah_Montesano@discovery.com

Dear Ms. Montesano,

Thank you for your response and the information you provided. Though I don't anticipate it, if I have any further questions, I will reach out to you directly.

Thanks,

Dennis E. Merkley
Merkley & Shields, LLC
4450 N Prospect Rd
Peoria Heights, IL 61616
Phone: (309) 723-8585
Fax: (309) 760-0435

On Apr 9, 2020, at 11:24 AM, Leah Montesano <Leah_Montesano@discovery.com> wrote:

Dear Mr. Merkley:

I write on behalf of Discovery, Inc. in response to your email below to Sean Boyle. Please direct all future correspondence regarding this matter to me.

Discovery will not confirm or deny the existence of any planned Discovery projects or programs before they are publicly announced.  I can, however, confirm that Mr. Boyle has not been involved in the project you describe below.  Mr. Boyle has not been involved in any way in "filming a production regarding the ambrotype and possibly violating non-disclosure agreements and possibly infringing upon Dr. Williamson's and Dr. Spolar's copyright interests."

I trust this response addresses your concerns.  Please let me know if you have any additional questions.

Best,
Leah Montesano

**Leah C. Montesano | Vice President, Litigation**
Discovery, Inc. | 8403 Colesville Road | Silver Spring, MD 20910
Office: 240.662.3998 | Cell: 301.346.1536

**From:** dmerkley@merkleyshields.com <dmerkley@merkleyshields.com>
**Sent:** Friday, April 3, 2020 6:04:06 AM
**To:** Sean Boyle <Sean_Boyle@discovery.com>
**Subject:** Abraham Lincoln Ambrotype - Dr. Tonny Williamson and Dr. Jerry Spolar

Dear Mr. Boyle,

I represent Dr. Tonny Williamson and Dr. Jerry Spolar. As you may recall, you met Dr. Williamson and Dr. Spolar in 2018 regarding an ambrotype, glass-plate image, believed to depict Abraham Lincoln after being shot at Ford's Theater. At that meeting, you, along with others, signed a non-disclosure agreement. Unfortunately, in 2019, a replevin lawsuit was filed in Adams County, Illinois. The Court froze the ambrotype in a bank

safe-deposit box pending the outcome of the case.

During our investigation of the case and through the discovery process, we have learned that the Plaintiff in that lawsuit has been involved with filming a production regarding the ambrotype and possibly violating non-disclosure agreements and possibly infringing upon Dr. Williamson's and Dr. Spolar's copyright interests. The film crew for that production made several statements that the production was set to air on the Discovery Channel. Obviously, I do not know the truth or veracity of those statements, which is why I am reaching out to you.

Can you confirm that the production is or is not going to be broadcast by Discovery or some affiliate? I am happy to schedule a brief telephone call to more fully and properly discuss this if you would like.

I look you forward to hearing from you in this regard. Thank you for your time and attention to this matter.

Dennis E. Merkley
Merkley & Shields, LLC
4450 N Prospect Rd
Peoria Heights, IL 61616
Phone: (309) 723-8585
Fax: (309) 760-0435

9

# EXHIBIT D

# DISCOVERY'S WEBSITE ANNOUNCEMENT
# (2 pages)

Captured 9/14/2020 from https://press.discovery.com/us/dsc/programs/lost-lincoln/

Watch Full Seasons on **Discovery**GO ›

**Discovery**   Shows   DNews   Nature   Exploration   Space   Science   Motor   Schedule   More

Home | **DNews**



Unrealistic Ideas

# Long-Lost Photo of Abraham Lincoln on Deathbed Featured in New Discovery Documentary Series

By: Nesa Nourmohammadi

THE LOST LINCOLN investigates the legitimacy of a new photograph featuring the 16th president on his deathbed when Discovery's new documentary series UNDISCOVERED premieres Sunday, October 4.

September 14, 2020



A newly uncovered photograph featuring former President Abraham Lincoln on his deathbed will be investigated in a new Discovery Channel special.

Premiering Sunday, October 4 at 9P ET, THE LOST LINCOLN is the first installment in Discovery's new documentary series UNDISCOVERED, which will uncover some of the mysteries of our time.



BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE   **EXHIBITS TO COMPLAINT**

THE LOST LINCOLN will follow professional authenticator Dr. Whitny Braun as she leads an investigation to determine whether or not a newly discovered photograph could be the 131st and final image of the president following his fatal shooting in 1865. Her journey to discover the truth will take audiences from Lincoln's birthplace in Kentucky to halls of the National Archives to the scene of his last moments alive in Ford's Theatre and the Petersen House in Washington, DC.



Unrealistic Ideas

As the 16th president of the United States, Lincoln is known for his leadership during the Civil War and the emancipation of slavery in the United States. He was assassinated on April 14, 1865 by Confederate sympathizer John Wilkes Booth while attending a play at Ford's Theatre.

Audiences can watch THE LOST LINCOLN on Discovery, or stream the special by downloading the Discovery GO app. They can also follow and join the conversation on social media by using the hashtag #LostLincoln on social media.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE
**EXHIBITS TO COMPLAINT**

# EXHIBIT E

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE
**EXHIBITS TO COMPLAINT**

## CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

THIS CONFIDENTIALITY AGREEMENT AND NONDISCLOSURE AGREEMENT (the "Agreement"), dated as of _February 16_, 20 _10_ ("Effective Date"), is between **Tommy J. Williamson** and **Jerry Spolar** with an address of 528 W. Jackson, Macomb, Illinois 61455 (collectively the "Disclosing Party"), and _Located at_ _____ of _corporation / position_ _____ _located at_ _____ , (_collectively the "Recipient"_).

WHEREAS, Disclosing Party is revealing Confidential Information, as defined herein, to Recipient; and

WHEREAS, Recipient desires to assure that the Confidential Information shall not be disclosed to others.

NOW, THEREFORE, in consideration of the foregoing premises, and the mutual covenants contained herein, Disclosing Party and Recipient hereby agree as follows:

1.    **Confidential Information.** In connection with the viewing, studying and disclosure of an Abraham Lincoln Photograph and related photographs, information, images, presentations, and documents (the "Purpose"), Disclosing Party may reveal to Recipient, or Recipient may otherwise receive access to, Confidential Information, as defined herein. Recipient shall use the Confidential Information solely for the Purpose and shall not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of the Disclosing Party. **Recipient shall take all steps necessary to protect the secrecy of the Confidential Information, which shall include, without limitation, not copying, photographing, recording, reproducing, recreating, disclosing, or divulging the Confidential Information.**

2.    **Definition of Confidential Information.** The definition of "Confidential Information" means all non-public, proprietary or confidential information relating to Disclosing Party's photograph of Abraham Lincoln and all proprietary research, documents, writings, photographs, images, and evidence related to such photograph of Abraham Lincoln; the history of such photograph; and all other related items and materials.

3.    **Recipient Obligations.** The Recipient covenants and warrants to:

(a)    protect and safeguard the confidentiality of all such Confidential Information with at least the same degree of care as the Recipient would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care;

(b)    not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than the Purpose, or otherwise in any manner to

the Disclosing Party's detriment, including without limitation, to copy, photograph, record, reproduce, or recreate the Confidential Information;

(c)    immediately notify the Disclosing Party of any unauthorized disclosure of Confidential Information or other breaches of this Agreement by the Recipient or its authorized representatives;

(d)    fully cooperate with the Disclosing Party in any effort undertaken by the Disclosing Party to enforce its rights related to any such unauthorized disclosure; and

(e)    be responsible for any breach of this Agreement caused by Recipient or any of its authorized representatives.

4.    **Required Disclosure.** Any Disclosure by the Recipient or its authorized representatives of any of the Disclosing Party's Confidential Information pursuant to applicable federal, state, local law, regulation or a valid order issued by a court or governmental agency of competent jurisdiction (a "Legal Order") shall be subject to the terms of this Section. Prior to making any such disclosure, the Recipient shall provide the Disclosing Party with:

(a)    prompt written notice of such requirement so that the Disclosing Party may seek a protective order or other remedy; and

(b)    reasonable assistance in opposing such disclosure or seeking a protective order or other limitations on disclosure.

If, after providing such notice and assistance as required herein, the Recipient remains subject to a Legal Order to disclose any Confidential Information, the Recipient shall disclose, and, if applicable, shall require its authorized representatives or other persons to whom such Legal Order is directed to disclose, no more than that portion of the Confidential Information which, on the advice of the Recipient's legal counsel, such Legal Order specifically requires and shall use commercially reasonable efforts to obtain assurances from the applicable court or agency that such Confidential Information will be afforded confidential treatment.

5.    **Title and Retention of Intellectual Property.** The Disclosing Party shall retain the title to all of its property, Confidential Information, and tangible and intangible property that may be produced as a result of such property and Confidential Information. The Disclosing Party shall also retain any and all intellectual property rights in its Confidential Information and disclaims any grant of a license to the Recipient.

6.    **Return or Destruction of Confidential Information.** Upon the termination of this Agreement, or at the Disclosing Party's request at any time during the term of this Agreement, the Recipient and its Representatives shall promptly return to the Disclosing Party all materials, whether in written, electronic or other form or media, of the Disclosing Party's Confidential Information. In addition, the Recipient shall also destroy all notes created by the Recipient or its

authorized representatives and certify in writing to the Disclosing Party that notes have been destroyed.

7.    **Indemnification.** The Recipient shall jointly and severally defend, indemnify, and hold harmless the Disclosing Party, its affiliates, and their respective shareholders, officers, directors, employees, agents, successors, and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, in connection with any third party claim, suit, action, or proceeding arising out of or resulting from a breach of any representation, warranty, or obligation set forth in this Agreement by the Recipient or any of its authorized representatives.

8.    **Remedies.** The Recipient acknowledges that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by the Recipient or its Representatives. Therefore, in addition to all other remedies available at law (which the Disclosing Party does not waive by the exercise of any rights hereunder), the Disclosing Party shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach or threatened breach, and the Recipient hereby waives any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such claim. In the event that either Party institutes any legal suit, action, or proceeding against the other Party arising out of or relating to this Agreement, the prevailing Party in the suit, action, or proceeding shall be entitled to receive in addition to all other damages to which it may be entitled, the costs incurred by such Party in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

9.    **Benefit and Burden.** This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their successors and permitted assigns.

10.    **Amendments and Waiver.** No amendment, modification, restatement or supplement of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party against whom that waiver is sought to be enforced.

11.    **Counterparts.** This Agreement may be executed in counterparts and by the different parties in separate counterparts, each of which when so executed shall be deemed an original and all of which taken together shall constitute one and the same agreement.

12.    **Captions and Headings.** The captions and headings contained in this Agreement are inserted and included solely for convenience and shall not be considered or given any effect in construing the provisions hereof if any question of intent should arise.

13.   **Construction.** The parties acknowledge that each of them has had the benefit of legal counsel of its own choice and has been afforded an opportunity to review this Agreement with its legal counsel and that this Agreement shall be construed as if jointly drafted by the parties hereto.

14.   **Severability.** Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement, and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.   **Effect of Facsimile and Photocopied Signatures.** This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.   **Governing Law.** This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.   **Jurisdiction/Venue.** The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

   **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**                          **RECIPIENT**

*Tonny J. Williamson*                          Whitny Braun
**Tonny J. Williamson**                        Print Name:

*Jerry Spolar*                                 Corporation: Unradister Eledras LLC
**Jerry Spolar**                               Position: Contradicect Spolar & Williamson
                                               to Archie Digs of
                                               Unradister LLC

13.   **Construction.**  The parties acknowledge that each of them has had the benefit of legal counsel of its own choice and has been afforded an opportunity to review this Agreement with its legal counsel and that this Agreement shall be construed as if jointly drafted by the parties hereto.

14.   **Severability.**  Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement , and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.   **Effect of Facsimile and Photocopied Signatures.**  This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.   **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.   **Jurisdiction/Venue.**  The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

   **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**

*Tonny Williamson*
**Tonny J. Williamson**

*Jerry Snowyn*
**Jerry Spolar**

**RECIPIENT**

Print Name: ARCHIE GIPS

Corporation: UNREALISTIC IDEAS

Position: PRESIDENT

Page 4 of 4

13.    **Construction.**  The parties acknowledge that each of them has had the benefit of legal counsel of its own choice and has been afforded an opportunity to review this Agreement with its legal counsel and that this Agreement shall be construed as if jointly drafted by the parties hereto.

14.    **Severability.**  Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement , and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.    **Effect of Facsimile and Photocopied Signatures.**  This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.    **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.    **Jurisdiction/Venue.**  The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

        **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**                                   **RECIPIENT**

_____                                _____
Tommy J. Williamson                                    Print Name: ANTONINO CUTRARO

                                                       _____
_____                                Corporation: UnRealistic Ideas
Jerry Spolar                                           Position: Editor

02/13/2018   19:28   3098367801                    SPOLAR                            PAGE   06/06
Feb 13 2018 10:40AM HP Fax Limbaugh Firm 5733350621

page 5

13.     **Construction.**  The parties acknowledge that each of them has had the benefit of legal counsel of its own choice and has been afforded an opportunity to review this Agreement with its legal counsel and that this Agreement shall be construed as if jointly drafted by the parties hereto.

14.     **Severability.**  Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement , and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.     **Effect of Facsimile and Photocopied Signatures.**  This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.     **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.     **Jurisdiction/Venue.**  The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

          **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**                              **RECIPIENT**

                                                  Whitny Braun
Tonny J. Williamson                               Print Name: _____

                                                  Corporation: Unrealistic Eldeas LLC

                                                  Position: Introduced Spolar & Williamso
Jerry Spolar                                                 to Archie Gips of
                                                            Unrealistic LLC

Page 4 of 4

13.     **Construction.**  The parties acknowledge that each of them has had the benefit of legal counsel of its own choice and has been afforded an opportunity to review this Agreement with its legal counsel and that this Agreement shall be construed as if jointly drafted by the parties hereto.

14.     **Severability.**  Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement, and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.     **Effect of Facsimile and Photocopied Signatures.**  This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.     **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.     **Jurisdiction/Venue.**  The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

        **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**                              **RECIPIENT**

_____                         _____
Tonny J. Williamson                               **Print Name:** _____
                                                       JAMES BEAUN

_____                         Corporation: _____
Jerry Spolar
                                                  Position: _____

Page 4 of 4

05/30/2018  18:47    3098357801                SPOLAR                              PAGE  02/05

# CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

**THIS CONFIDENTIALITY AGREEMENT AND NONDISCLOSURE AGREEMENT** (the "Agreement"), dated as of _6/1_____, 20 _18_ ("Effective Date"), is between **Tonny J. Williamson and Jerry Spolar** with an address of 528 W. Jackson, Macomb, Illinois 61455 (collectively the "Disclosing Party"), and _Sean Boyle_____ located at _7049 Century Pkt East #90_ (collectively the "Recipient"). LA, CA 90067

**WHEREAS,** Disclosing Party is revealing Confidential Information, as defined herein, to Recipient; and

**WHEREAS,** Recipient desires to assure that the Confidential Information shall not be disclosed to others.

**NOW, THEREFORE,** in consideration of the foregoing premises, and the mutual covenants contained herein, Disclosing Party and Recipient hereby agree as follows:

1.    **Confidential Information.** In connection with the viewing, studying and disclosure of an Abraham Lincoln Photograph and related photographs, information, images, presentations, and documents (the "Purpose"), Disclosing Party may reveal to Recipient, or Recipient may otherwise receive access to, Confidential Information, as defined herein. Recipient shall use the Confidential Information solely for the Purpose and shall not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of the Disclosing Party. Recipient shall take all steps necessary to protect the secrecy of the **Confidential Information, which shall include, without limitation, not copying, photographing, recording, reproducing, recreating, disclosing, or divulging the Confidential Information.**

2.    **Definition of Confidential Information.** The definition of "Confidential Information" means all non-public, proprietary or confidential information relating to Disclosing Party's photograph of Abraham Lincoln and all proprietary research, documents, writings, photographs, images, and evidence related to such photograph of Abraham Lincoln; the history of such photograph; and all other related items and materials.

3.    **Recipient Obligations.** The Recipient covenants and warrants to:

(a)    protect and safeguard the confidentiality of all such Confidential Information with at least the same degree of care as the Recipient would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care;

(b)    not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than the Purpose, or otherwise in any manner to the Disclosing Party's detriment, including without limitation, to copy, photograph, record, reproduce, or recreate the Confidential Information;

14.     **Severability.**  Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement , and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.     **Effect of Facsimile and Photocopied Signatures.**  This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.     **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.     **Jurisdiction/Venue.**  The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

        **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**                          **RECIPIENT**

_____                       _____
**Tonny J. Williamson**                       Print Name: _Jean Boyle_
                                              Position: _VP - History_


_____                       _____
**Jerry Spolar**                              Print Name: _____
                                              Position: _____

# CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

**THIS CONFIDENTIALITY AGREEMENT AND NONDISCLOSURE AGREEMENT** (the "Agreement"), dated as of ___JUNE 1___, 20_18_ ("Effective Date"), is between Tonny J. Williamson and Jerry Spolar with an address of 528 W. Jackson, Macomb, Illinois 61455 (collectively the "Disclosing Party"), and ___KRISTEN BURNS___ located at ___235 E 45th ST, NY NY 10017___, (collectively the "Recipient").

**WHEREAS,** Disclosing Party is revealing Confidential Information, as defined herein, to Recipient; and

**WHEREAS,** Recipient desires to assure that the Confidential Information shall not be disclosed to others.

**NOW, THEREFORE,** in consideration of the foregoing premises, and the mutual covenants contained herein, Disclosing Party and Recipient hereby agree as follows:

1.   **Confidential Information.** In connection with the viewing, studying and disclosure of an Abraham Lincoln Photograph and related photographs, information, images, presentations, and documents (the "Purpose"), Disclosing Party may reveal to Recipient, or Recipient may otherwise receive access to, Confidential Information, as defined herein. Recipient shall use the Confidential Information solely for the Purpose and shall not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of the Disclosing Party. **Recipient shall take all steps necessary to protect the secrecy of the Confidential Information, which shall include, without limitation, not copying, photographing, recording, reproducing, recreating, disclosing, or divulging the Confidential Information.**

2.   **Definition of Confidential Information.** The definition of "Confidential Information" means all non-public, proprietary or confidential information relating to Disclosing Party's photograph of Abraham Lincoln and all proprietary research, documents, writings, photographs, images, and evidence related to such photograph of Abraham Lincoln; the history of such photograph; and all other related items and materials.

3.   **Recipient Obligations.** The Recipient covenants and warrants to:

   (a)   protect and safeguard the confidentiality of all such Confidential Information with at least the same degree of care as the Recipient would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care;

   (b)   not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than the Purpose, or otherwise in any manner to the Disclosing Party's detriment, including without limitation, to copy, photograph, record, reproduce, or recreate the Confidential Information;

14.    **Severability.**  Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement , and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.    **Effect of Facsimile and Photocopied Signatures.**  This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.    **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.    **Jurisdiction/Venue.**  The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**                                **RECIPIENT**

Tonny J. Williamson                                Print Name: KRISTEN BURNS
                                                    Position: EXECUTIVE PRODUCER, HISTORY

Jerry Spolar                                        Print Name: _____
                                                    Position: _____

14.    **Severability.** Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement , and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.    **Effect of Facsimile and Photocopied Signatures.** This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.    **Governing Law.** This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.    **Jurisdiction/Venue.** The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

　　　　**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**

**RECIPIENT**

Tonny J. Williamson

Print Name: _Paul Jaqowski_
Position: _Jaqowler_

_____

Jerry Spolar

Print Name: _____
Position: _____