BUCHALTER
A Professional Corporation
WILLMORE F. HOLBROW III (SBN: 169688)
    wholbrow@buchalter.com
MATTHEW L. SEROR (SBN:  235043)
    mseror@buchalter.com
SEAN M. CASEY (SBN: 179641)
    scasey@buchalter.com
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA  90017
Telephone:  213.891.0700

BUCHALTER
A Professional Corporation
DYLAN WISEMAN (SBN: 173669)
    dwiseman@buchalter.com
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone:  415.227.3546

Attorneys for Plaintiffs JERRY A. SPOLAR
and TONNY JILL WILLIAMSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY A. SPOLAR, an individual; TONNY JILL WILLIAMSON, an individual,<br><br>      Plaintiffs,<br><br>      vs.<br><br>DISCOVERY COMMUNICATIONS, LLC, a Delaware limited liability company; UNREALISTIC IDEAS, LLC, a Delaware limited liability company; PIECE OF WORK PRODUCTIONS, LLC, a California limited liability company; ARCHIE GIPS, an individual; WHITNY BRAUN, an individual; JAMES BRAUN, an individual; and DOES 1 through 25,<br><br>      Defendants. | Case No. 2:20-cv-8837_SVW-MAA<br><br>***EX PARTE* APPLICATION FOR AND MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: TEMPORARILY ENJOINING DISCOVERY COMMUNICATIONS, LLC FROM BROADCASTING THE UNLAWFUL DOCUMENTARY CONCERNING THE 1865 AMBROTYPE OF *PRESIDENT LINCOLN*, SCHEDULED TO AIR ON OCTOBER 4, 2020** |

*EX PARTE* **APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

## NOTICE OF APPLICATION

Plaintiffs Jerry A. Spolar and Tonny J. Williamson (collectively, "Plaintiffs") hereby submit this *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause Why an Injunction Should Not Issue, as set forth in the proposed Orders filed concurrently herewith.  Fed. R. Civ. P. 65; Local Rule 7-19; 18 U.S.C. § 1836; Cal. Bus. & Prof. Code § 17203.  Plaintiffs request a hearing, at the Court's discretion, at the earliest possible date and time.

This action is premised on defendants' misappropriation of Plaintiffs' confidential and trade secret information regarding the last photographic image (an ambrotype) of Abraham Lincoln ("Lincoln Ambrotype"), taken while he was on his deathbed in 1865.  The Lincoln Ambrotype is owned by Plaintiffs, who spent over two decades engaging experts and assembling information ("Confidential Information") to confirm the authenticity of the Lincoln Ambrotype. In approximately 2018, Plaintiffs decided to utilize the results of their research efforts in connection with developing and overseeing a documentary focused on the Lincoln Ambrotype. As part of that process, Plaintiffs disclosed their confidential and trade secret information to certain Defendants, subject to Non-Disclosure Agreements.

On September 14, 2020, Plaintiff learned that Discovery Communications, LLLC ("Discovery") planned to air an unlawful documentary falsely characterizing Whitny Braun as the creator, historian, and source of all the information relating to the authentication of the Lincoln Ambrotype.  Indeed, Discovery is now advertising, and will soon debut, its documentary using and disclosing Plaintiffs' confidential and trade secret information.  The damage to Plaintiffs' reputation, goodwill, and rights is irreparable and will continue to increase unless this Court immediately restrains Discovery from broadcasting its unlawful documentary.

*EX PARTE* **APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

1    In light of the above, Plaintiffs request that the Court issued an order to show

2  cause and temporarily enjoin Discovery from broadcasting the documentary and

3  using the Confidential Information. Plaintiffs also request an Order compelling

4  Discovery to provide Plaintiffs with a copy of the complete documentary and an

5  opportunity to review the documentary, evaluate and/or expose the extent of

6  Defendants' misconduct and false or misleading statements, and subsequently

7  advise the Court accordingly.  [See Proposed Order lodged herewith.]

8    In compliance with **Local Rule 7-19**: Plaintiffs notified Leah Montesano,

9  Vice President, Litigation and in house counsel for Discovery of the lawsuit, and

10 Plaintiffs requested, relief on September 25, 2020, the week after Discovery

11 announced the documentary, by sending an email to Ms. Montesano (Holbrow Dec.

12 ¶, Ex. A).  Ms. Montesano's address is Discovery, Inc. 8403 Colesville Road, Silver

13 Spring, MD 20910.

14   On September 28, 2020, Ms. Montesano responded to the email and advised

15 that Discovery <u>refused</u> to provide a copy of the documentary and would not delay

16 its broadcast. Shortly thereafter, Plaintiffs' counsel sent a follow-up email to Ms

17 Montesano and left a voicemail message on her mobile phone asking if Discovery

18 would oppose Plaintiffs' request for temporary restraining order.  [At the time this

19 was drafted, Ms. Montesano had not responded regarding whether Discovery

20 intended to oppose this Application.] Holbrow Decl., ¶¶3-7.

21   The grounds for this Application are set forth in this Application and the

22 accompanying Memorandum of Points and Authorities, the Declarations of Jerry A.

23 Spolar, Dennis E. Merkley, and Willmore F. Holbrow, and the Exhibits thereto, the

24 proposed Orders in support of this motion herewith, and any additional evidence

25 and argument that the Court may consider at a hearing on this Application.

26

27

28

BUCHALTER
A Professional Corporation
Irvine

BN 41914594v1

2

*EX PARTE* **APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER**

1

2  DATED:  September 28, 2020          BUCHALTER
                                       A Professional Corporation
3

4
                                       By:    /s/Willmore F. Holbrow
5                                             WILLMORE F. HOLBROW III
                                              DYLAN WISEMAN
6                                             MATTHEW L. SEROR
                                              SEAN M. CASEY
7                                             Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BN 41914594v1                                      3
*EX PARTE* **APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION ................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................... 2

    A.     The Lincoln Ambrotype ............................................................ 2

    B.     Plaintiffs' Trade Secrets ............................................................ 3

    C.     Plaintiffs Entered Into Confidential Business Relationships With Whitny Braun, Unrealistic and Others ...................................... 4

    D.     Defendants Used Plaintiffs' Confidential and Trade Secret Information to Create a Competing Documentary ...................... 4

    E.     Defendants' Misappropriation and Unfair Competition Are Causing Actual Harm .............................................................. 6

III.   LEGAL STANDARD .......................................................................... 6

IV.    ARGUMENT ....................................................................................... 7

    A.     Plaintiffs Are Likely to Prevail on the Merits of Their Claims ........... 7

        1.     Breach of Contract ......................................................... 7

        2.     Violation of the Defend Trade Secrets Act of 2016 ................. 8

        3.     Unfair Competition ...................................................... 13

    B.     Plaintiffs Are Threatened With Irreparable Injury ..................... 15

    C.     The Balance of Hardships Favors Injunctive Relief .................... 17

    D.     Public Interest Favors Injunctive Relief .................................. 18

    E.     Limited Bond Is Required ....................................................... 18

    F.     Necessity For *Ex Parte* Relief ................................................. 18

        1.     Plaintiffs Will Suffer Irreparable Prejudice Without Ex Parte Relief ................................................................. 19

        2.     Plaintiffs Did Not Create the Exigency .............................. 19

    G.     Prior Restraint Does Not Bar an Injunction .............................. 20

V.     CONCLUSION .................................................................................. 23

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AdvantaCare Health Partners, LP v. Access IV, Inc.*,
　No. C-03-04496-JF(HRL), 2003 WL 23883596
　(N.D. Cal. Oct. 24, 2003) ................................................................... 14

*Alaska v. Native Village of Venetie*,
　*856 F.2d 1384* (9th Cir. 1988) .............................................................. 7

*AT & T Commc'ns of California v. Pacific Bell*,
　1996 WL 940836 (N.D. Cal. 1996) .................................................... 16

*Berger v. City of Seattle*,
　569 F.3d 1029 (9th Cir. 2009) ........................................................... 20

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
　174 F.3d 1036 (9th Cir. 1999) ............................................................. 7

*Brooks v. Vallejo City Unified Sch. Dist.*,
　2009 WL 10441783 (E.D. Cal. Oct. 30, 2009) ................................. 22

*Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*,
　No. 15-02177-SI, 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) ...... 12

*Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*,
　No. 19-00642 JLS JDE, 2019 WL 2177262 (C.D. Cal. May 20,
　2019), *appeal dismissed,* No. 19-55614, 2020 WL 2791789
　(9th Cir. May 19, 2020) ..................................................................... 15

*Corp. Express Office Prod., Inc. v. Martinez*,
　No. CV-SA02-87 ................................................................................ 14

*Corporate Express Office Products, Inc. v. Martinez*,
　2002 WL 31961458 (C.D. Cal. 2002) .......................................... 7, 14

*DeMichiel v. AEG Live NJ LLC*,
　No. 16-00913 GHK ............................................................................ 20

ii

***EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
   13-00784-MCE, 2013 WL 2151553 (E.D. Cal. May 16, 2013) ........................ 17

*Gallagher Benefits Servs., Inc. v. De La Torre*,
   No. C 07-5495 VRW, 2007 WL 4106821 (N.D. Cal. Nov. 16,
   2007), *order aff'd in part, vacated in part sub nom. Gallagher
   Benefit Servs., Inc. v. De La Torre*, 283 F. App'x 543
   (9th Cir. 2008) ................................................................................. 14

*Henry Schein, Inc. v. Cook*,
   191 F. Supp. 3d 1072 (N.D. Cal. 2016).............................................. 18

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*,
   736 F.3d 1239 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 57 (2014) .................... 17

*Iconix, Inc. v. Tokuda*,
   457 F. Supp. 2d 969 (N.D. Cal. 2006).............................................. 14

*Imi-Tech Corp. v. Gagliani*,
   691 F. Supp. 214 (S.D. Cal. 1987) ............................................... 9, 12

*Int'l Profit Assocs., Inc. v. Paisola*,
   461 F. Supp. 2d 672 (N.D. Ill. 2006)............................................... 22

*Interloc Sols., Inc. v. Tech. Assocs. Int'l Corp.*,
   No. 07-01534 LEW ...................................................................... 14

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ....................................................... 18

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ........................................................ 18

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995)................................................. 19

*MySpace, Inc. v. Wallace*,
   498 F. Supp. 2d 1293 (C.D. Cal. 2007)............................................ 16

*National Abortion Federation v. Center for Medical Progress*,
   2016 WL 454082 (N.D. Cal. Feb. 5, 2016)................................ 20, 21, 22

*Pacific Aerospace & Elecs., Inc. v. Taylor*,
   295 F. Supp. 2d 1205 (E.D. Wash. 2003) ......................................... 16

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE
BN 41914594v1
iii
*EX PARTE* **APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER**

*Paisa, Inc. v. N & G Auto, Inc.*,
  928 F. Supp. 1004 (C.D. Cal. 1996) .................................................................. 7

*Peel v. BrooksAmerica Mortg. Corp.*,
  788 F. Supp. 2d 1149 (C.D. Cal. 2011) ............................................................ 8

*Regents of the Univ. of California v. ABC, Inc.*,
  747 F.2d 511 (9th Cir. 1984) ...................................................................... 7, 16

*Reichert v. General Ins. Co.*,
  68 Cal. 2d 822 (1968) ........................................................................................ 8

*Samick Music Corp v. Gordon*,
  2020 WL 3210613 (C.D. Cal. Mar, 26, 2020) .............................................. 8, 18

*San Antonio Cmty. Hosp. v. S. California Dist. Council of Carpenters*,
  125 F.3d 1230 (9th Cir. 1997) ........................................................................ 22

*Self Directed Placement Corp. v. Control Data Corp.*,
  908 F.2d 462 (9th Cir. 1990) .......................................................................... 13

*SolarCity Corp. v. Pure Solar Co.*,
  No. 16-01814 BRO ........................................................................................ 12

*Stanley v. University of Southern California*,
  13 F.3d 1313 (9th Cir. 1994) ............................................................................ 7

*TGG Mgmt. Co. Inc. v. Petraglia*,
  No. 19-CV-2007-BAS-KSC, 2020 WL 209103
  (S.D. Cal. Jan. 14, 2020) ................................................................................ 15

*Van De Kamp v. Tahoe Reg'l Planning Agency*,
  766 F.2d 1319 (9th Cir. 1985), *amended*, 775 F.2d 998 (9th Cir.
  1985) ............................................................................................................... 18

*Waymo LLC v. Uber Techs., Inc.*,
  No. C 17-939 WHA, 2017 WL 2123560 (N.D. Cal. May 15, 2017) ............... 15

*Wyndham Resort Devel. Corp. v. Bingham*,
  No. 10-01556-GEB-KJM, 2010 WL 2720920
  (E.D. Cal. July 8, 2010) .................................................................................. 17

BUCHALTER
A Professional Corporation
Irvine

***EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

*Zeetogroup, LLC v. Fiorentino*,
  No. 19-00458 JLS (NLS), 2019 WL 2090007 (S.D. Cal. May 13,
  2019) .......................................................................................................... 14

**Statutes**

18 U.S.C. § 1836(b)(1) ...................................................................................... 9

18 U.S.C. § 1836(b)(3)(A) ................................................................................ 6

18 U.S.C. § 1839(3) ........................................................................................... 9

18 U.S.C. §§ 1839(5), 1839(5)(B)(ii) ............................................................ 12

18 U.S.C. § 1839(6) ......................................................................................... 12

Cal. Bus. & Prof. Code § 17200 ............................................................... 13, 14

Cal. Bus. & Prof. Code § 17203 ....................................................................... 7

California Uniform Trade Secrets Act .............................................................. 8

Defend Trade Secrets Act .................................................................... 8, 9, 12

Lanham Act ........................................................................................................ 7

Unfair Competition Law ................................................................................. 13

Violation of the Defend Trade Secrets Act of 2016 ........................................ 8

**Other Authorities**

Federal Rule of Civil Procedure 65(c) ............................................................ 18

*EX PARTE* **APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Jerry A. Spolar and Tonny J. Williamson (collectively "Plaintiffs") seek a temporary restraining order to restrain and enjoin Discovery Communications, LLC ("Discovery") from broadcasting a documentary film about Plaintiffs' 1865 photograph of President Lincoln ("Lincoln Ambrotype"). The documentary is based on the unauthorized and unlawful use of Plaintiffs' confidential and trade secret information.  If the Discovery documentary film is broadcast on October 4, 2020, as presently scheduled, Plaintiffs will be irreparably harmed.

Plaintiffs are both accomplished dentists and business partners who have expended hundreds of thousands of dollars in a quest to establish an historically accurate provenance for the Lincoln Ambrotype – that journey has transformed them into highly knowledgeable historians relating to the Lincoln Ambrotype. For over more than two decades, Plaintiffs have painstakingly researched and demonstrated the authenticity of the Lincoln Ambrotype, developing a treasure trove of confidential and trade secret information in the process.  During the course of their research efforts, Plaintiffs connected with Whitny Braun, an ethics professor at Loma Linda University, who had contacts at Unrealistic Ideas ("Unrealistic"), a production company.  Both Whitny Braun and Unrealistic entered into Plaintiffs' Non-Disclosure Agreement.  With these protections in place, Plaintiffs provided Ms. Braun and Unrealistic with confidential research and records relating to the Lincoln Ambrotype, After unsuccessful attempts to pitch Plaintiffs' concept of a documentary to National Geographic and the History Channel, Ms. Braun and Unrealistic stopped trying. Instead, we now know, they surreptitiously took the concept of a documentary and Plaintiffs' confidential and trade secret information to Discovery, concealing it from Plaintiffs.

**BUCHALTER**
A PROFESSIONAL CORPORATION
IRVINE

***EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

Although there were unsubstantiated rumors, on September 14, 2020, Discovery, for the first time, announced that it was planning to broadcast a documentary concerning Plaintiff's Lincoln Ambrotype. Discovery further falsely represented that Whitny Braun and Unrealistic were the primary forces behind the years of research supporting the Lincoln Ambrotype's authentication. Based on the accompanying trailer for the documentary, the host - and alleged source of the research and information relating to the Lincoln Ambrotype - is none other than Ms. Braun. This is the same Ms. Braun, an assistant-professor of bioethics at Loma Linda University, who had never heard of the Lincoln Ambrotype prior to speaking to Plaintiffs and reviewing Plaintiffs' confidential and trade secret information.

Although it has been requested, Discovery has refused to provide Plaintiffs with a copy of the entire documentary for review and analysis. (Holbrow Dec. Ex. A). In light of the above, Plaintiffs therefore request that the Court temporarily enjoin Discovery from broadcasting the documentary until such time as Plaintiffs can review the documentary, evaluate and expose the extent of Defendants' misconduct, and submit reasonable requests with respect to the next course of action. Indeed, if Defendants are permitted to continue unfettered, Plaintiffs' life's work, consisting of two decades of painstaking research and investigation, will be falsely attributed to Whitny Braun. Making matters worse, the only way Defendants were able to produce their documentary was by breaching their Non-Disclosure Agreements and misappropriating Plaintiffs' confidential information and trade secrets.

## II.   FACTUAL BACKGROUND

### A.   The Lincoln Ambrotype

In 1996, Plaintiffs acquired [CS1]an ambrotype photograph believed to be a long-lost photograph of President Abraham Lincoln, which was taken the night he was mortally wounded after having been shot by John Wilkes Booth. Spolar Decl.,

2

¶ 3.[1]  In the intervening decades since, Plaintiffs have consulted, worked with, and hired dozens of experts around the United States to examine forensically and authenticate the Lincoln Ambrotype and its historical provenance.  *Id*., ¶ 5.  Over the course of 24 years, Plaintiffs have invested thousands of hours and hundreds of thousands of dollars in interviews, examinations, tests, experiments, and travel to develop a comprehensive historical analysis of the facts and circumstances surrounding the technology, creation, and lineage[2] of the Lincoln Ambrotype.  *Id*., ¶ 6.  There are only 130 known and authenticated photographs of President Lincoln.  *Id*., ¶ 2.  The Lincoln Ambrotype would be the 131st.  *Id*.

**B.    Plaintiffs' Trade Secrets**

As a result of their decades-long efforts, Plaintiffs developed a vast network of consultants, experts, and collaborators.  *Id*., ¶ 5.  Plaintiffs also accumulated volumes of confidential work product, including: a confidential list of dozens of medical, forensic, and authentication experts; detailed reports, analyses, and conclusions; scientific analytical drawings; annotated images and overlays of the Lincoln Ambrotype and features thereon; experimental procedures and results; related expert and consultant write-ups; handwritten notes, annotated figures and images, and detailed notes of Plaintiffs' interactions with their team of collaborators; and various duplication methods used to create images of the Lincoln Ambrotype to enable more detailed photogrammetric analyses (the "Confidential and Trade Secret Information").  *Id*., ¶¶ 15-19.

To protect their substantial investment, at all times, Plaintiffs imposed strict confidentiality obligations, reinforced by non-disclosure agreements and

---

[1] In 2004, Plaintiffs acquired full ownership interest in the Lincoln Ambrotype, including documentation of prior ownership that included canceled checks and notarized proofs of sale and ownership documents. The Lincoln Ambrotype originated with descendants of President Lincoln. *Id*.
[2] In 2008, Larry Davis attested to his personal knowledge of the provenance of the Lincoln Ambrotype by providing handwritten statements that were notarized and included his thumbprint. *Id*., ¶ 18.

*EX PARTE* **APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

confidential work-for-hire agreements, before engaging in any meaningful discussion of the Lincoln Ambrotype, and/or Plaintiffs' authentication efforts. *Id.*, ¶¶ 8, 12. Plaintiffs also required their collaborators to release and deliver all pre-existing and newly created work product to Plaintiffs, and ensured that no third party retained anything related to the Lincoln Ambrotype. *Id.*, ¶ 11. All of the work performed by the collaborators was "work for hire," and assigned to Plaintiffs. In addition, Plaintiffs ensured that the Lincoln Ambrotype never left their control. *Id.*, ¶ 10.

### C.     Plaintiffs Entered Into Confidential Business Relationships With Whitny Braun, Unrealistic and Others

After more than two decades of intense investigation, study, accumulation of data, and scientific analyses, Plaintiffs determined that they had succeeded in forensically establishing the provenance of the Lincoln Ambrotype and wanted to share their results publicly in a way they were able to control. *Id.*, ¶¶ 20-21. To that end, they sought to make a documentary film regarding their journey of investigating the technology and history of the Lincoln Ambrotype. Plaintiffs were referred to Defendants Whitny and James Braun. *Id.*, ¶ 23. Ms. Braun indicated that she had an existing relationship with Unrealistic, a documentary film production company. *Id.*, ¶ 24. Before discussing the documentary, the Brauns, and Unrealistic (through its President Archie Gips), executed non-disclosure agreements. *Id.*, ¶¶ 27-28, Exs. A-B. In February 2018, Plaintiffs met with W. Braun, J. Braun, and Gips to deliver a presentation describing their extensive authentication efforts and identifying some of their experts.

### D.     Defendants Used Plaintiffs' Confidential and Trade Secret Information to Create a Competing Documentary

In the weeks following the meeting with Defendants, Plaintiffs learned that W. Braun had taken information from Plaintiffs' confidential expert lists, contacted

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

Plaintiffs' experts and requested Plaintiffs' confidential information, and posted excerpts of Plaintiffs' confidential materials on a website. *Id.*, ¶¶ 33-36, 44. Plaintiffs reminded W. Braun of her confidentiality obligations and demanded she take down the misappropriated materials and return their Confidential and Trade Secret Information. *Id.* A few weeks later, W. Braun, J. Braun, and Gips informed Plaintiffs that National Geographic was not interested in the project, and referred Plaintiffs to Sean Boyle and Kristen Burns at the History Channel. *Id.*, ¶¶ 37-38, Ex. C. Before discussing the documentary, Plaintiffs obtained signed NDAs from History Channel representatives. *Id.*, ¶ 39. The idea for documentary and the presentation appeared to be well-received, but Unrealistic returned with an offer of only $2,000, which Plaintiffs found unreasonable and was consequently rejected. *Id.*, ¶ 40. Thereafter, in August 2018, W. Braun, J. Braun, and Unrealistic represented that there was no interest in the project and that they would not move forward with the documentary. *Id.*, ¶ 41.

Yet, following this assertion, Plaintiffs received sporadic information from their experts, historians, and collaborators that Defendants Gips, J. Braun, and W. Braun were contacting experts from Plaintiffs' confidential expert list and may have filmed activities with Plaintiffs' experts in violation of their NDAs and confidential work-for-hire agreements. *Id.*, ¶ 42, 44-45. During this time, Plaintiffs also discovered that the producers, Svet from National Geographic and Boyle from the History Channel, had left their respective positions to join Discovery in producer roles. *Id.*, ¶ 43. Plaintiffs sent cease and desist letters to no avail. *Id.*, ¶¶ 46-51, Exs. D-F. Then, on September 14, 2020, Plaintiffs learned that Discovery had announced that Defendants had secretly created a competing documentary entitled "Discovery Presents Hidden Photo of Lincoln" or "Undiscovered: The Lost Lincoln," focused on the Lincoln Ambrotype, which was scheduled to air on October 4, 2020. *Id.*, ¶ 52. The announcement was accompanied by a video trailer

*EX PARTE* **APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER**

incorporating historical and factual inaccuracies and errors, including, without limitation the false statement that the Lincoln Ambrotype was taken after President Lincoln had died. *Id.*, ¶ 56. It was not until Plaintiffs viewed the announcement and video trailer that Plaintiffs learned the extent of Defendants misappropriation and breaches. *Id.*, ¶ 54.

### E. Defendants' Misappropriation and Unfair Competition Are Causing Actual Harm

Plaintiffs have invested considerable effort and expense to examine forensically and authenticate the Lincoln Ambrotype and its historical provenance. *Id.*, ¶¶ 5-6. Defendants have used Plaintiffs' decades-long efforts, which they improperly obtained, and appear to take credit for the research themselves, with no mention of Plaintiffs. Moreover, they created a historically and factually inaccurate documentary and wrongly eliminated Plaintiff's ability to effect and control the story. *Id.* ¶ 56. Historical errors in the trailer, if propagated to the broadcast, will cause further irreparable harm to the value of the Lincoln Ambrotype. *Id.*, ¶¶ 56-57. Additionally, if the unlawful documentary is broadcast, Plaintiffs will be foreclosed from creating their own documentary, as interest and investment in a second documentary covering the Lincoln Ambrotype, is non-existent. Accordingly, the broadcast of the October 4, 2020 documentary will cause irreparable harm to Plaintiffs' property, including the Lincoln Ambrotype and the confidential, proprietary, and trade secret work product created by Plaintiffs over the last 24 years. *Id.*, ¶ 57.

### III. LEGAL STANDARD

California and federal law expressly authorize injunctive relief in cases involving the misappropriation of trade secrets or unfair competition. 18 U.S.C. § 1836(b)(3)(A); Cal. Bus. & Prof. Code § 17203; *Corporate Express Office Products, Inc. v. Martinez*, 2002 WL 31961458 *6 (C.D. Cal. 2002) ("The misuse

6

1  of confidential or trade secret information are acts of unfair competition that may be

2  enjoined.").

3      This Court may issue preliminary injunctive relief if it finds that (1) Plaintiffs

4  will suffer irreparable injury if relief is not granted; (2) Plaintiffs will probably

5  prevail on the merits; (3) the balancing of equities favor Plaintiffs; and (4) granting

6  the injunction is in the public interest. *Stanley v. University of Southern California*,

7  13 F.3d 1313, 1319 (9th Cir. 1994); *Paisa, Inc. v. N & G Auto, Inc.*, 928 F. Supp.

8  1004, 1007 (C.D. Cal. 1996). The Ninth Circuit also recognizes an "alternative

9  test" wherein the moving party must establish either (1) that it will likely prevail on

10  the merits and suffer irreparable harm without the order, or (2) that serious

11  questions are raised and the balance of hardships tips sharply in its favor.

12  *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d

13  1036, 1046 (9th Cir. 1999) (issuing injunction under the Lanham Act).

14      The two standards are not so much separate tests as a "continuum," where the

15  required showing of harm varies inversely with the required showing of probability

16  of success. *Regents of the Univ. of California v. ABC, Inc.*, 747 F.2d 511, 515 (9th

17  Cir. 1984). "The critical element in determining the test to be applied is the relative

18  hardship to the parties. If the balance of harm tips decidedly toward the plaintiff,

19  then the plaintiff need not show as robust a likelihood of success on the merits as

20  when the balance tips less decidedly." *Alaska v. Native Village of Venetie, 856*

21  *F.2d 1384, 1389* (9th Cir. 1988).

22      Plaintiffs satisfy their burden as to either test.

23  **IV.**   **ARGUMENT**

24      **A.**   **Plaintiffs Are Likely to Prevail on the Merits of Their Claims**

25          *1.*   *Breach of Contract*

26      Under California law, a breach of contract claim requires proof of: (1) the

27  existence of a contract; (2) performance by Plaintiffs or excuse for nonperformance;

28

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

BN 41914594v1

***EX PARTE* APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER**

(3) Defendants' breach; and (4) resulting damage to Plaintiffs. *Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1166 (C.D. Cal. 2011); *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968).

Plaintiffs and Defendants Unrealistic, Gips, W. Braun, and J. Braun entered into several NDAs and/or work-for-hire agreements detailing their obligation to refrain from disclosing or retaining certain facts and work product disclosed to them by Plaintiffs. Compl., ¶¶ 20, 60, 72-74; Exs. E, (the "Agreements"). The respective Agreements were fully executed by Plaintiffs and each of Defendants Unrealistic, Gips, W. Braun, and J. Braun. Compl., ¶¶ 20, 60, 74; Exs. E. Defendants breached the Agreements by using and disclosing Plaintiffs' Confidential and Trade Secret Information to third parties. Defendants also agreed in Section 8 of the NDAs that specific performance and injunctive relief shall be granted for an actual or threatened breach. Moreover, Defendants will further breach their contractual obligations on October 4, 2020, if not enjoined, by using and broadcasting Plaintiffs' Confidential and Trade Secret Information in a documentary on the Discovery Channel to members of the public worldwide. Compl., ¶ 54, Ex. D; Spolar Decl., ¶ 52, Ex. G. Plaintiffs therefore are likely to prevail on their breach of contract claim.

### 2. *Violation of the Defend Trade Secrets Act of 2016*

The elements of misappropriation under the Defend Trade Secrets Act (the "DTSA") are substantially similar to those under the California Uniform Trade Secrets Act (the "CUTSA"). *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017) (citing 18 U.S.C. § 1839(5) in comparison to Cal. Civ. Code § 3426.1(b)); *see also, Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018); *Samick Music Corp v. Gordon*, 2020 WL 3210613, at * 8 (C.D. Cal. Mar, 26, 2020) (issuing TRO). Thus, Plaintiffs meet their burden of showing probable success on a

*EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

claim for misappropriation of trade secrets by showing: (1) a legally protectable trade secret and (2) a legal basis, either a covenant or a confidential relationship, upon which to predicate relief. *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 230 (S.D. Cal. 1987) (issuing preliminary injunction); 18 U.S.C. § 1836(b)(1).

Under the DTSA, the term "trade secret" is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> >
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C.A. § 1839(3).

Plaintiffs' trade secrets include. without limitation, the compilation of a confidential list of dozens of medical, forensic, and authentication experts; detailed reports, analyses, and conclusions; scientific analytical drawings; annotated images and overlays of the Lincoln Ambrotype and features thereon; experimental procedures and results; related expert and consultant write-ups; handwritten notes,

annotated figures and images, and detailed notes of Plaintiffs' interactions with their team of collaborators; and various duplication methods used to create images of the Lincoln Ambrotype to enable more detailed photogrammetric analyses (the "Confidential and Trade Secret Information").  Compl., ¶¶ 21-27; Spolar Decl., ¶¶ 15-17, 19.  As detailed above and in the supporting declarations, Plaintiffs' Confidential and Trade Secret Information was based on Mr. Spolar's and Ms. Williamson's life's work over 24 years assembling these works, which comprised Plaintiffs' authentication, forensic, and provenance roadmap of their journey in investigating the technology and history of the Lincoln Ambrotype.  Compl., ¶ 22. Plaintiffs spent substantial time, effort, and expense in the assembly of the Confidential and Trade Secret Information to establish the provenance of the Lincoln Ambrotype, including Plaintiffs' full ownership of the same.  Compl., ¶ 18; Spolar Decl., ¶¶ 3, 5-6, 18.  As a result of those efforts, the Lincoln Ambrotype has been appraised at a value of $14,000,000.  Merkley Decl., ¶ 4, Ex. A at 214:3-20. The claimed Confidential and Trade Secret Information is clearly valuable.

Additionally, Plaintiffs took reasonable efforts to keep their proprietary information and materials confidential.  Plaintiffs obtained signed NDAs and/or work-for-hire agreements imposing confidentiality requirements before meaningfully discussing their work or the Lincoln Ambrotype with any third party, including, but not limited to, a third party's employees, collaborators, and experts. Spolar Decl., ¶¶ 8, 19, 27-30, 39.  Indeed, Plaintiffs insisted that defendants execute NDAs in advance of any meetings.  *Id*., ¶¶ 27-30, 39, Ex. A-B.  Further, Mr. Spolar never allowed the Lincoln Ambrotype to leave his (or Ms. Williamson's) possession, custody, or control.  *Id*., ¶ 10.  Plaintiffs also ensured that all collaborators and hired professionals returned all confidential materials, including but not limited to, work product, images of the Ambrotype, analyses, and

**EX PARTE APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER**

experimental results, experimental setups to Plaintiffs.  *Id*., ¶ 11.  Consequently, Plaintiffs have established legally protectable trade secrets.

Misappropriation is:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who--
>
>> (i) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--
>>
>>> (I) derived from or through a person who had used improper means to acquire the trade secret;
>>>
>>> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>>>
>>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>>
>> (iii) before a material change of the position of the person, knew or had reason to know that--
>>
>>> (I) the trade secret was a trade secret; and

*EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

(II) knowledge of the trade secret had been

acquired by accident or mistake.

18 U.S.C.A. § 1839(5).  In other words, the DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*, No. 15-02177-SI, 2017 WL 1436044, at *4 (N.D. Cal. Apr. 24, 2017).  "Improper means" "includes theft, bribery, misrepresentation, *breach or inducement of a breach of a duty to maintain secrecy*, or espionage through electronic or other means."  18 U.S.C.A. § 1839(6) (emphasis added).

Plaintiffs have shown that they had a confidential relationship with Defendants through which Defendants acquired the Confidential and Trade Secret Information.  *See* Compl., ¶¶ 20, 60, 72-74, Ex. E.  Defendants breached this duty of confidentiality and used the Confidential and Trade Secret Information to develop a competing documentary through which Defendants are disclosing Plaintiffs' Confidential and Trade Secret Information without Plaintiffs' authorization, input or control.  *See Imi-Tech*, 691 F. Supp. at 231 (holding defendants "used improper means" to acquire the trade secrets at issue because they were disclosed in violation of "express or implied duties of nondisclosure or nonuse"); Compl., ¶¶ 45-58; Spolar Decl., ¶¶ 42-55.  Discovery is aware that the documentary inappropriately contains trade secret information; By way of example only, it has received notice (i) from Plaintiffs' attorney in January and April 2020 [Compl. Exs. B and C], and (ii) upon receipt of the underlying Complaint on September 25, 2020.  18 U.S.C. § 1839(5)(B)(ii) ("misappropriation" means "disclosure or use of a trade secret of another without express or implied consent by a person who *at the time of the disclosure or use*, knew or had reason to know that the knowledge of the trade secret" was improperly obtained) (emphasis added); *SolarCity Corp. v. Pure Solar Co.*, No. 16-01814 BRO DTBx, 2016 WL 11019989, at *4 (C.D. Cal. Dec. 27, 2016) (defendant "'knew *or had reason to know* that the

12

knowledge of the trade secret' was derived from or by 'a person who had used improper means to acquire the trade secret'" when defendant received cease and desist letters) (emphasis in original).

In light of the above, it is quite clear that Discovery has knowledge that the information contained in the documentary constitutes Plaintiffs' trade secrets, and therefore they should be enjoined from broadcasting it.

### 3.    Unfair Competition

The Unfair Competition Law (the "UCL") prohibits "any unlawful, unfair or fraudulent business practice." Cal. Bus. & Prof. Code § 17200. Unfair competition by misappropriation requires that: (1) the plaintiff has invested substantial time and money in development of its property (i.e., the confidential information); (2) the defendant(s) have appropriated the property at little or no cost; and (3) the plaintiff has been injured by the defendants' conduct. *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 467 (9th Cir. 1990). The defendants can be liable for unfair competition even where no trade secret exists. *Id*.

Misappropriation may occur by way of a breach of confidence, by simply demonstrating these elements, even when the illicitly divulged information does not rise to the level of a trade secret:

> An actionable claim for breach of confidential relationship
> occurs when: an idea, whether or not protectable, is
> offered to another in confidence, and is voluntarily
> received by the offeree in confidence with the
> understanding that it is not to be disclosed to others, and is
> not to be used by the offeree for purposes beyond the limits
> of the confidence without the offeror's permission.

*Id*. Accordingly, using confidential information obtained from Plaintiffs to compete with them is the textbook definition of unfair competition. In such

*EX PARTE* **APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

situations, a preliminary injunction is the preferred relief.  *See, e.g., Zeetogroup, LLC v. Fiorentino*, No. 19-00458 JLS (NLS), 2019 WL 2090007, at *5–6 (S.D. Cal. May 13, 2019) (granting preliminary injunction based on trade secrets and unfair competition claims); *Interloc Sols., Inc. v. Tech. Assocs. Int'l Corp.*, No. 07-01534 LEW GGHX, 2007 WL 2429715, at *1 (E.D. Cal. Aug. 24, 2007) (same); *AdvantaCare Health Partners, LP v. Access IV, Inc.*, No. C-03-04496-JF(HRL), 2003 WL 23883596, at *3 (N.D. Cal. Oct. 24, 2003) (finding unfair competition claim based on misappropriation of confidential and trade secret information supports injunctive relief); *Corp. Express Office Prod., Inc. v. Martinez*, No. CV-SA02-87 AHS(ANX), 2002 WL 31961458, at *6 (C.D. Cal. Mar. 8, 2002) ("The misuse of confidential or trade secret information are acts of unfair competition that may be enjoined."); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 996-98 (N.D. Cal. 2006) (issuing preliminary injunction under Section 17200 on grounds employee breached fiduciary duty when he used employer's ideas and property to form his own business).

In this action, the conduct giving rise to the unfair competition claim is even more egregious because defendants not only used Plaintiffs' confidential and proprietary information, they also used Plaintiffs' own methods, experts, and consultants, over which Plaintiffs maintained strict confidentiality.  Spolar Decl., ¶¶ 33-36, 42-44, 46, 49; *Gallagher Benefits Servs., Inc. v. De La Torre*, No. C 07-5495 VRW, 2007 WL 4106821, at *5 (N.D. Cal. Nov. 16, 2007)*, order aff'd in part, vacated in part sub nom. Gallagher Benefit Servs., Inc. v. De La Torre*, 283 F. App'x 543 (9th Cir. 2008) ("Even if all the materials appropriated by defendants do not qualify as trade secrets, defendants' appropriation of Gallagher's materials in order to compete against Gallagher and target Gallagher's customers should still be enjoined under California Business and Professions Code section 17200 et seq, which prohibits unfair competition.").  The same reasoning and results apply here

1   with equal force.  Accordingly, Plaintiffs are likely to prevail on their unfair

2   competition claim.

3        **B.**     **Plaintiffs Are Threatened With Irreparable Injury**

4        Defendants' existing and ongoing breach of their confidentiality obligations

5   has already resulted in irreparable harm and injury to Plaintiffs' efforts to market

6   and develop their documentary.  Any continued breach beyond this point will result

7   in further harm that cannot be compensated by the award of monetary damages

8   after trial.

9        Continued unauthorized use of confidential information or a trade secret

10   "will almost always certainly show irreparable harm." *Chartwell Staffing Servs.*

11   *Inc. v. Atl. Sols. Grp. Inc.*, No. 19-00642 JLS JDE, 2019 WL 2177262, at *10–11

12   (C.D. Cal. May 20, 2019), *appeal dismissed,* No. 19-55614, 2020 WL 2791789 (9th

13   Cir. May 19, 2020) ("Indeed, 'an intention to make imminent or continued use of a

14   trade secret or to disclose it to a competitor will almost always certainly show

15   irreparable harm.'"); *TGG Mgmt. Co. Inc. v. Petraglia*, No. 19-CV-2007-BAS-

16   KSC, 2020 WL 209103, at *7–8 (S.D. Cal. Jan. 14, 2020) (finding irreparable harm

17   based on "potential loss of the value of its trade secrets"); *see also Waymo LLC v.*

18   *Uber Techs., Inc.*, No. C 17-939 WHA, 2017 WL 2123560, at *11 (N.D. Cal. May

19   15, 2017) (finding irreparable harm because defendant was in possession of

20   confidential files and "[m]isuse of that treasure trove remains an ever-present

21   danger.... Such misuse cannot be unwound after the fact, nor can it be adequately

22   compensated for with monetary damages.").

23        Plaintiffs have met their burden of showing irreparable injury.  Plaintiffs

24   have detailed the great time and expense spent to authenticate and establish the

25   provenance of the Lincoln Ambrotype.  Compl., ¶ 18; Spolar Decl., ¶¶ 5-6.  By

26   taking unfair advantage of Plaintiffs' skill and expenditures, Defendants are

27   misappropriating Plaintiffs' goodwill.  One of the reasons Plaintiffs insisted on

28

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

***EX PARTE* APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER**

NDAs was because they wanted to tell their story about their decades-long efforts to demonstrate the authenticity of the Lincoln Ambrotype, through their own documentary. Now that Defendants have unlawfully usurped that right, and, if the documentary is allowed to air, Plaintiffs' efforts and expenditures will have been for naught, and Plaintiffs' opportunity to directly benefit from these efforts is forever and irreparably harmed. Further, Defendants' documentary hinders the market value of Plaintiffs' competing documentary by reducing the available market. *Regents of Univ. of California v. Am. Broad. Companies, Inc*., 747 F.2d 511, 520 (9th Cir. 1984); *see also*, *Pacific Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1205, 1219-20 (E.D. Wash. 2003) (issuing injunction in trade secrets case and noting "[i]ntangible injuries, such as damage to goodwill, qualify as irreparable harm."). In addition, Plaintiffs' loss of control over a trade secret is itself an irreparable harm. *See AT & T Commc'ns of California v. Pacific Bell*, 1996 WL 940836 (N.D. Cal. 1996) (agreeing with plaintiff that loss of control over a trade secret is itself an irreparable harm because "once information loses its confidentiality, there is no amount of money or effort that will make it confidential again.").

Moreover, based on Plaintiffs' review of the promotional trailers, portions of Defendants' documentary are factually inaccurate or misleading, which creates distrust in the provenance and authenticity of the Lincoln Ambrotype and catastrophically diminishes the value of Plaintiffs' decades of work. This in turn decreases Plaintiffs' competitive advantage, endangers Plaintiffs' reputation, and may have an irreversible, negative impact on the value of the Lincoln Ambrotype. *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable.") (citing *Rent–A–Center, Inc. v. Canyon Tele. & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)). Plaintiffs took over twenty years to forensically examine

*EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1   and authenticate the Lincoln Ambrotype and its historical provenance, and their

2   decades-long efforts are irreplaceable.  Thus, monetary damages are inadequate to

3   compensate for Plaintiffs' injury.  *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*,

4   736 F.3d 1239, 1249 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 57 (2014).

5            **C.      The Balance of Hardships Favors Injunctive Relief**

6            The hardship to Plaintiffs is clear if injunctive relief is not granted.

7   Defendants have stolen Plaintiffs' Confidential and Trade Secret Information to

8   create a competing documentary, impairing or destroying Plaintiffs' first-to-market

9   advantage by "leapfrogging" into the position of having a competing product before

10  Plaintiffs. Because it is relatively hard to "innovate," and relatively easy and quick

11  to "develop" a product by stealing another's work, misappropriators, if unchecked,

12  will reap the benefit of work they did not do, while the innovators suffer a loss, or

13  at least fail to make gains, which they had hoped, expected, and deserved to make

14  by their efforts.  *See Merrill Lynch, Pierce Genner & Smith Inc. v. Chung*, No. 01–

15  00659 CBM RCX, 2001 WL 283083, at *6 (C.D.Cal. Feb.2, 2001) (the balance of

16  hardships tips in favor of a plaintiff seeking an injunction which would "merely

17  prohibit [the d]efendants from misappropriating the trade secrets of [the

18  p]laintiff."); *see also, Wyndham Resort Devel. Corp. v. Bingham*, No. 10-01556-

19  GEB-KJM, 2010 WL 2720920, at *7 (E.D. Cal. July 8, 2010) (finding balance of

20  hardships tipped in favor of plaintiff when plaintiffs had "vital interest in protecting

21  [their] trade secret information"); *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, 13-

22  00784-MCE, 2013 WL 2151553, at *14 (E.D. Cal. May 16, 2013). Moreover, at

23  this point, Plaintiffs are merely seeking a temporary injunction to give them an

24  opportunity to review/analyze the documentary and then determine their next steps.

25  A temporary delay in broadcasting the unlawful documentary is not a significant

26  hardship on Discovery, especially under the circumstances.

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

BN 41914594v1                                      17

***EX PARTE* APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER**

### D.    Public Interest Favors Injunctive Relief

Finally, "the public interest is served when defendant is asked to do no more than abide by trade laws and the obligations of contractual agreements signed with her employer.  Public interest is also served by enabling the protection of trade secrets." *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1078 (N.D. Cal. 2016) (citing *Bank of Am., N.A. v. Lee*, No. 08-5546 CAS (JWJx), 2008 WL 4351348, at *7 (C.D. Cal. Sept. 22, 2008)).  So too does the public interest favor historically accurate representations of the facts and circumstances surrounding an historical artifact as important as the Lincoln Ambrotype. This factor, too, favors an injunction.

### E.    Limited Bond Is Required

The Court has discretion over the amount of security, if any, required under Federal Rule of Civil Procedure 65(c).  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  A district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen*, 320 F.3d at 919).  Where the hardship to defendant from the issuance of a temporary restraining order is very low, the likelihood of success on the merits "tips in favor of a minimal bond or no bond at all." *Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985), *amended*, 775 F.2d 998 (9th Cir. 1985).  Should the Court find likelihood of success on the merits, the Court should not require Plaintiffs to post a bond.  *See e.g., Samick Music Corp. v. Gordon*, No. 20-0395-GW-JDEX, 2020 WL 3210613, at *11 (C.D. Cal. Mar. 26, 2020).  Here, the hardship on Discovery is very low as it can easily broadcast another one of its shows in the October 4th time slot. Notwithstanding the above, Plaintiffs suggest a bond in the amount of $10,000, if any.

### F.    Necessity For *Ex Parte* Relief

*EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

A party filing an ex parte application must establish justification for seeking emergency relief, which requires "evidence [ ] that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

### 1.   *Plaintiffs Will Suffer Irreparable Prejudice Without Ex Parte Relief*

Defendant's unauthorized documentary is scheduled to air on The Discovery Channel on October 4, 2020 at 9:00 P.M. Eastern time.  Spolar Decl., ¶¶ 52-53.  Accordingly, if *ex parte* relief is not granted, Plaintiffs' Confidential and Trade Secret information will be disclosed to the public before its motion may be heard. *Id.*, 57.  Plaintiffs seek the *ex parte* issuance of a temporary restraining order because Defendants' intentional and unlawful misappropriation of Plaintiffs' Confidential and Trade Secret Information is causing harm to its reputation, lost profits, and the diminution in value of its Confidential and Trade Secret Information.  *Id*.  As such, Plaintiffs' rights can only be adequately protected by the issuance of a temporary restraining order.

### 2.   *Plaintiffs Did Not Create the Exigency*

Plaintiffs are not responsible for creating the crisis that requires *ex parte* relief.  Defendants actively concealed their misappropriation of the Confidential and Trade Secret Information through the use of covert meetings and by instructing third parties to conceal their communications.  Compl., ¶ 66; Spolar Decl., ¶ 46.  Although Plaintiffs heard rumors that Defendants migh be making a documentary, Defendants refused to confirm or deny any production involving Plaintiffs' Confidential and Trade Secret Information.  Compl., ¶¶ 48, 53; Spolar Decl., ¶¶ 46,

51.  As a result, Plaintiffs did not learn the scope of Defendants' misappropriation and breaches, or the extent of the harm inflicted upon Plaintiffs, until Discovery published an announcement and the video trailer for Defendants' documentary on September 14, 2020.  Compl., ¶¶ 54-56; Spolar Decl., ¶¶ 52-56.  Since this recent discovery, Plaintiffs have moved expeditiously to gather evidence, prepare and file their Complaint, and prepare this motion.  Yet, despite Plaintiffs' diligence, the impending broadcast of Defendant's documentary in approximately one week necessitates *ex parte* relief.  *See e.g., DeMichiel v. AEG Live NJ LLC,* No. 16-00913 GHK AGRx, 2016 WL 11519281, at *2 (C.D. Cal. Feb. 11, 2016) (finding defendant was "without fault in creating the crisis" and granting *ex parte* relief when "awaiting a hearing date on a normally-scheduled motion would therefore defeat the purpose of the motion").

## G.     Prior Restraint Does Not Bar an Injunction

Plaintiffs' requested injunction does not constitute impermissible prior restraint.  First, the injunction sought is narrowly tailored in time and scope.  *Berger v. City of Seattle*, 569 F.3d 1029, 1041 (9th Cir. 2009) ("a narrowly tailored time, place, or manner restriction on speech is one that does not 'burden substantially more speech than necessary'").  Plaintiffs are not seeking an injunction prohibiting the release of Defendants' documentary altogether.  *See* Proposed Order, filed concurrently.  Rather, Plaintiffs seek an injunction of sufficient duration to (1) allow Plaintiffs to review Defendant Discovery's documentary and determine whether any portions of the documentary reveal Plaintiffs' Confidential and Trade Secret Information, are factually improper, discredit Plaintiffs' methods or ownership interest in the Lincoln Ambrotype, or fail to credit Plaintiffs appropriately, and (2) provide supplemental briefing regarding why portions of the documentary should not be aired.

In *National Abortion Federation v. Center for Medical Progress*, 2016 WL

*EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

454082, *2, (N.D. Cal. Feb. 5, 2016), Judge Orrick granted a TRO and injunctive relief in a dispute in which the defendants signed confidentiality agreements with plaintiff prior to attending its annual conference.  In doing so, as here, the defendants agreed to injunctive relief as the remedy for a breach of the confidentiality term.  *Id*., at *1.  Defendants then proceeded to record attendees at the conference and plaintiff's injunction sought to enjoin defendants from "publishing recordings taken at the NAF annual meetings." *Id*.  Defendants argued that the TRO and the preliminary injunction was a prior restraint, and thus violated their First Amendment rights.  Judge Orrick concluded:

> Defendants also claim that the injunction is an unconstitutional prior restraint. ***They ignore that they agreed to keep the information secret and agreed to the remedy of an injunction if they breached the agreement***. Confidentiality agreements are common to protect trade secrets and other sensitive information, and individuals who sign such agreements are not free to ignore them because they think the public would be interested in the protected information. *Id*., at *2, emphasis added

Here, much the defendants in *National Abortion Federation*, several of the defendants including Unreal, agreed to injunctive relief.  The Remedies portion of Plaintiff's  Confidentiality and Nondisclosure Agreement provides:

*EX PARTE* **APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER**

8. **Remedies.** The Recipient acknowledges that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by the Recipient or its Representatives. Therefore, in addition to all other remedies available at law (which the Disclosing Party does not waive by the exercise of any rights hereunder), the Disclosing Party shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach or threatened breach, and the Recipient hereby waives any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such claim. In the event that either Party institutes any legal suit, action, or proceeding against the other Party arising out of or relating to this Agreement, the prevailing Party in the suit, action, or proceeding shall be entitled to receive in addition to all other damages to which it may be entitled, the costs incurred by such Party in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

Accordingly, Defendants' anticipated prior restraint argument ignores the importance of the Confidentiality and Nondisclosure Agreements to which they are bound.   In *National Abortion Federation* at page 18, Judge Orrick relied upon *Brooks v. Vallejo City Unified Sch. Dist*., 2009 WL 10441783, at * 5 (E.D. Cal. Oct. 30, 2009) to conclude that by signing confidentiality agreements individuals "were entitled to bargain away free speech rights by agreeing to confidentiality provisions or other contractual provisions that restrict free speech."

Additionally, the showing of a misleading statement or falsity warrants entry of a preliminary injunction, where the moving party meets the requirements for a preliminary injunction.  *See Int'l Profit Assocs., Inc. v. Paisola*, 461 F. Supp. 2d 672, 679 (N.D. Ill. 2006).  Further, the Ninth Circuit has issued a preliminary injunction prohibiting the display of a banner when the statement of fact contained therein was "so misleading that it falls beyond the First Amendment's protections." *See e.g.*, *San Antonio Cmty. Hosp. v. S. California Dist. Council of Carpenters*, 125 F.3d 1230, 1237 (9th Cir. 1997).  Accordingly, a temporary injunction/preliminary injunction is appropriate here.

BUCHALTER
A Professional Corporation
Irvine

BN 41914594v1

22

*EX PARTE* **APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

## V.    <u>CONCLUSION</u>

Plaintiffs have demonstrated a highly probable likelihood of success on the merits, as well as actual irreparable injury.  Accordingly, Plaintiffs respectfully request that this Court grant the temporary restraining order, or in the alternative, a preliminary injunction, to ensure that Plaintiffs obtain an adequate remedy against Defendants' brazen violation of Plaintiffs' rights.

DATED:  September 28, 2020          BUCHALTER
                                    A Professional Corporation


                                    By:    /s/Willmore F. Holbrow
                                          WILLMORE F. HOLBROW III
                                          DYLAN WISEMAN
                                          MATTHEW L. SEROR
                                          SEAN M. CASEY
                                          Attorneys for Plaintiffs