AARON J. MOSS (SBN 190625)
AMoss@ggfirm.com
JOSHUA M. GELLER (SBN 295412)
JGeller@ggfirm.com
JILLIAN A. BERK (SBN 328439)
JBerk@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendant
DISCOVERY COMMUNICATIONS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY A. SPOLAR, an individual; TONNY JILL WILLIAMSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DISCOVERY COMMUNICATIONS, LLC, a Delaware limited liability company; UNREALISTIC IDEAS, LLC, a Delaware limited liability company; PIECE OF WORK PRODUCTIONS, LLC, a California limited liability company; ARCHIE GIPS, an individual; WHITNY BRAUN, an individual; JAMES BRAUN, an individual; and DOES 1 through 25,<br><br>Defendants. | Case No. 2:20-cv-08837-SVW-MAA<br><br>**DISCOVERY'S OPPOSITION TO PLAINTIFFS'** *EX PARTE* **APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE INJUNCTION**<br><br>**[Declarations of Howard Swartz, Laurie Goldberg and Donna D'Alessandro filed concurrently]** |

83891-00023/3869595.7

DISCOVERY'S OPPOSITION TO
*EX PARTE* APPLICATION

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1
II. RELEVANT FACTUAL BACKGROUND .................................................... 2
   A. Unrealistic Ideas Pitches the Feature to Discovery. ............................ 2
   B. Plaintiffs Learn of the Feature, Wait Nine Months, And Then Assert Unmeritorious Claims for Trade Secret Misappropriation ........ 4
III. PLAINTIFFS SEEK AN UNCONSTITUTIONAL PRIOR RESTRAINT OF DISCOVERY'S SPEECH ................................................ 5
   A. Prior Restraints Like the Injunction Plaintiffs Seek Are Extremely Disfavored. .......................................................................... 5
   B. Prior Restraints on a Matter of Public Interest Are Impermissible Even in the Trade Secret Context. ....................................................... 7
IV. PLAINTIFFS CANNOT MEET THE STANDARD FOR A PRELIMINARY INJUNCTION ..................................................................... 9
   A. Plaintiffs Cannot Show a Likelihood of Success on the Merits as to Discovery. ......................................................................................... 9
   B. Plaintiffs Will Not Suffer Irreparable Harm. ..................................... 10
   C. The Balance of Hardships Favors Discovery. ................................... 12
   D. The Public Interest Weighs Against the Injunction. ......................... 13
   E. If the Court Were to Grant an Injunction, Plaintiffs Must Post a Substantial Bond. ................................................................................ 14
V. CONCLUSION ............................................................................................. 15

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alexander v. United States*,
 509 U.S. 544 (1993) ............................................................................................ 5

*Bantam Books, Inc. v. Sullivan*,
 372 U.S. 58 (1963) .............................................................................................. 5

*Bombardier Inc. v. Mitsubishi Aircraft Corp.*,
 383 F. Supp. 3d 1169 (W.D. Wash. 2019) .......................................................... 9

*Calence, LLC v. Dimension Data Holdings, PLC*,
 222 F. App'x 563 (9th Cir. 2007) ...................................................................... 11

*CBS, Inc. v. Davis*,
 510 U.S. 1315 (1994) ...................................................................................... 5, 7

*Citibank, N.A. v. Citytrust*,
 756 F.2d 273 (2d Cir. 1985) .............................................................................. 10

*Cuviello v. City of Vallejo*,
 944 F.3d 816 (9th Cir. 2019) .............................................................................. 5

*Elrod v. Burns*,
 427 U.S. 347 (1976) ............................................................................................ 2

*Ford Motor Co. v. Lane*,
 67 F. Supp. 2d 745 (E.D. Mich. 1999) ............................................................... 8

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*,
 847 F.2d 100 (3d Cir. 1988) .............................................................................. 14

*Garcia v. Google, Inc.*,
 786 F.3d 733 (9th Cir. 2015) ............................................................................ 10

*Klein v. City of San Clemente*,
 584 F.3d 1196 (9th Cir. 2009) .......................................................................... 13

*Melendres v. Arpaio*,
 695 F.3d 990 (9th Cir. 2012) ............................................................................ 13

*Miami Herald Publ'g Co. v. Tornillo*,
 418 U.S. 241 (1974) (White, J., concurring) ...................................................... 5

*Nano-Second Tech. Co. v. Dynaflex Int'l*,
 2011 WL 4502025 (C.D. Cal. Sept. 28, 2011) ................................................. 11

*National Abortion Federation v. Center for Medical Progress*,
 2016 WL 454082 (N.D. Cal. Feb. 5, 2016) ........................................................ 7

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Navigation Holdings, LLC v. Molavi*,
  445 F. Supp. 3d 69 (N.D. Cal. 2020) ............................................................... 9

*Near v. Minnesota*,
  283 U.S. 697 (1931) .......................................................................................... 5

*Nebraska Press Ass'n v. Stuart*,
  427 U.S. 539 (1976) ..................................................................................... 1, 5

*New York Times Co. v. United States*,
  403 U.S. 713 (1971) ..................................................................................... 5, 6

*New.Net, Inc. v. Lavasoft*,
  356 F. Supp. 2d 1071 (C.D. Cal. 2003) ...................................................... 6, 8

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
  762 F.2d 1374 (9th Cir. 1985) ....................................................................... 10

*Playmakers LLC v. ESPN, Inc.*,
  376 F.3d 894 (9th Cir. 2004) ......................................................................... 13

*Procter & Gamble Co. v. Bankers Trust Co.*,
  78 F.3d 219 (6th Cir. 1996) ............................................................................. 8

*Puma SE v. Forever 21, Inc.*,
  2017 WL 4771003 (C.D. Cal. June 2, 2017) ................................................ 11

*Religious Technology Center v. Lerma*,
  897 F. Supp. 260 (E.D. Va. 1995) ................................................................... 6

*San Antonio Cmty. Hosp. v. S. California Dist. Council of Carpenters*,
  125 F.3d 1230 (9th Cir. 1997) ......................................................................... 6

*TDBBS LLC v. Ethical Prod. Inc.*,
  2019 WL 979944 (D. Ariz. Feb. 28, 2019) ................................................... 11

*Wreal, LLC v. Amazon.com, Inc.*,
  840 F.3d 1244 (11th Cir. 2016) ..................................................................... 10

**STATUTES**

Defend Trade Secrets Act, 18 U.S.C. § 1836 ........................................................ 9

Federal Rule of Civil Procedure 65(c) ................................................................. 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' *ex parte* application for temporary restraining order ("TRO") seeks a prior restraint to prevent defendant Discovery Communications, LLC ("Discovery") from airing a television documentary about the last known photograph of Abraham Lincoln. The program is scheduled to premiere on Sunday October 4, 2020—only five days from today.[1]

Prior restraints are the "most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). They have been uniformly rejected by the Supreme Court, even in cases involving national security and in cases in which the information to be published has been obtained illegally. Plaintiffs Jerry Spolar and Tonny Williamson ("Plaintiffs") seek this presumptively unconstitutional remedy against Discovery in order to enforce a non-disclosure agreement to which Discovery is not even a party. Discovery has no relationship with Plaintiffs, contractual or otherwise, and Plaintiffs have presented no evidence that Discovery obtained any information constituting Plaintiffs' purported "trade secrets," let alone that Discovery knowingly obtained such information through improper means.

Plaintiffs do not cite a single case in which a prior restraint has been granted under these circumstances. To the contrary, courts have routinely denied as unconstitutional injunctions against publishers who have received information from a source in alleged violation of that party's confidentiality agreement. Plaintiffs'

---

[1] Discovery first learned of Plaintiffs' TRO application and supporting papers after 5 p.m. Pacific time on September 28, 2020, when Plaintiffs emailed a courtesy copy of their papers to Discovery's corporate counsel and notified Discovery that, pursuant to this Court's Standing Order, opposing papers must be filed "not later than 3:00 p.m. on the first business day succeeding the day the *ex parte* was served." Dkt. 9. While the Court later issued an order giving Discovery until September 30 to file its opposition (Dkt. 13), Discovery is nevertheless still filing these papers on September 29 in light of the short time period until its program is scheduled to air and the critical constitutional issues involved.

mere act of denominating such information as "trade secrets" does not constitute grounds for issuing a prior restraint.

Moreover, Plaintiffs do not even attempt to show that any harm they will allegedly suffer as a result of Discovery's broadcast is not compensable in damages. Plaintiffs assert amorphous harm based on a lack of "credit" and to protect the value of a potential "competing documentary" about the same subject matter as Discovery's. *See* TRO, Dkt. No. 8 at *15:11–15 (alleging that defendants "created a historically and factually inaccurate documentary and wrongly eliminated Plaintiff's ability to effect and control the story"). These alleged harms, if proven, are easily remedied through monetary damages or, better yet, through the publication of Plaintiffs' own program which, tellingly, they have never produced despite allegedly studying the Lincoln photo for over two decades.

By contrast, any injunction preventing the release of the documentary, no matter how short, would irreparably harm Discovery by infringing its First Amendment rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury for purposes of the issuance of a preliminary injunction." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, Plaintiffs seek to enjoin Discovery "pending the resolution of the action" from "[b]roadcasting in any medium any documentary productions" about the Lincoln photo at issue. If Discovery were required to remove its previously scheduled and heavily advertised primetime programming, it will not only lose revenue, but its audience will be deprived of access to a documentary that is undoubtedly in the public interest.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Unrealistic Ideas Pitches the Feature to Discovery.

In the summer of 2019, the production company Unrealistic Ideas, LLC ("Unrealistic") pitched a feature-length documentary to Discovery concerning an ambrotype photograph of President Abraham Lincoln, believed to be the last ever

photograph taken of him. At various pitch meetings in this time period, representatives of Unrealistic informed Discovery's Senior Vice-President of Production & Development for Documentaries & Specials, Howard Swartz, about the efforts that Unrealistic had undertaken to independently investigate and authenticate the photograph and to determine whether it was taken before or after Lincoln's death. These efforts included work by Whitny Braun, a researcher and authenticator who specializes in investigating items of historical significance. Declaration of Howard Swartz ("Swartz Decl."), ¶¶2–3.

In light of the historical and public significance of the photograph, Discovery entered into a deal with Unrealistic to develop and distribute a documentary feature, to be aired under the title *Undiscovered: The Lost Lincoln* (the "Feature"). Swartz Decl., ¶4. At the time Discovery entered into that deal, Discovery was not aware of any claims of competing ownership in any intellectual property or source material associated with the Feature.[2] Discovery was informed and understood that the information contained in the Feature had been independently developed and vetted by Unrealistic. Indeed, Unrealistic represented and warranted that it had all rights in and to the Feature, and that production and distribution of the Feature would not violate any third party's rights (including confidentiality rights). Swartz Decl., ¶5.

After Discovery entered into its deal in late summer 2019, Unrealistic proceeded to produce the Feature. The Feature is set to air on October 4, 2020 on the Discovery Channel's Sunday evening primetime slot. The Feature is designed to be the first in an anthology series of various investigative documentaries of historical significance produced under Discovery's new *Undiscovered* banner. Swartz Decl., ¶7.

---

[2] While Plaintiffs claim in their TRO application that the "Lincoln Ambrotype is owned by Plaintiffs" (TRO, Dkt. 8 at *12 n.1), materials produced in connection with their application indicate that ownership of the physical photograph is apparently the subject of litigation in Illinois. Dkt. 8-2 (attaching deposition transcript excerpts from *Davis v. Spolar*, No. 19-CH-6).

      B.      <u>Plaintiffs Learn of the Feature, Wait Nine Months, And Then Assert Unmeritorious Claims for Trade Secret Misappropriation.</u>

On January 21, 2020, Plaintiffs sent a demand letter to W. Braun and provided a courtesy copy to Discovery. In that letter, Plaintiffs asserted that W. Braun was subject to a non-disclosure agreement that restricted the use of "all non-public, proprietary or confidential information relating to [the Ambrotype]." Compl., Ex. B. Plaintiffs also stated: "We have learned through sworn testimony that [Plaintiffs'] Confidential Information has been disclosed for purposes of filming a production that we understand is to be aired on the Discovery Channel." *Id.*

Despite Plaintiffs' claims, Discovery understood and believed (based both on its many conversations with Unrealistic's representatives and the representations and warranties included in their contractual agreement) that nothing in the Feature infringed on any of Plaintiffs' rights or used Plaintiffs' confidential information. Swartz Decl., ¶5. Discovery is not a party to any non-disclosure or other confidentiality agreement with Plaintiffs. Swartz Decl., ¶6. Moreover, Plaintiffs did not assert any claims against Discovery in that January 21, 2020 demand letter.

Several months later, on April 3, 2020, Plaintiffs (through their attorney) reached out to a Discovery employee by email. In that email, Plaintiffs reiterated that they had once again "learned" of "a production regarding the ambrotype" that was "set to air on the Discovery Channel." Compl., Ex. C. Again, Plaintiffs did not assert any claims against Discovery. *Id.*

Suddenly, after months of silence, Plaintiffs filed the instant suit on September 25, 2020. On September 28, 2020, six days before the Feature is scheduled to air on the Discovery Channel, Plaintiffs filed their *ex parte* application for a temporary restraining order to halt the release of the Feature.

## III. PLAINTIFFS SEEK AN UNCONSTITUTIONAL PRIOR RESTRAINT OF DISCOVERY'S SPEECH

### A. Prior Restraints Like the Injunction Plaintiffs Seek Are Extremely Disfavored.

The relief requested by Plaintiffs is among the most extraordinary and most disfavored remedies under the law—a prior restraint of speech on a matter of public interest. *See Nebraska Press*, 427 U.S. at 559, 562; *Alexander v. United States*, 509 U.S. 544, 549 (1993) ("Temporary restraining orders and permanent injunctions— *i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints."). Plaintiffs' eleventh-hour attempt to stop the broadcast of Discovery's documentary must be rejected as an impermissible prior restraint.

A prior restraint on speech is universally recognized to be "the most serious and the least tolerable infringement on First Amendment rights." *Cuviello v. City of Vallejo*, 944 F.3d 816, 831 (9th Cir. 2019) (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. at 559). In fact, a "chief purpose of [the First Amendment's] guaranty [is] to prevent previous restraints on publication." *Near v. Minnesota*, 283 U.S. 697, 713 (1931). As a result, every request for a prior restraint must be examined with "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *see also New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (same). Plaintiffs have not come close to overcoming the "virtually insurmountable barrier" against the issuance of the sort of prior restraint they now seek. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 259 (1974) (White, J., concurring).

The Supreme Court's precedent on prior restraint is ironclad. The Court has held that prior restraints on publication are unconstitutional *even when the publication threatens urgent national security interests*. *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (citing *New York Times*, 403 U.S. at 714). In the famous Pentagon Papers case, the Supreme Court established that a plaintiff must make an

extraordinary showing of harm in order to obtain a court order that stops the news media from publishing information on a matter of public concern. The United States government had sought an injunction to prevent the *New York Times* and *Washington Post* from publishing information from a classified study on the Vietnam War. Though the materials "pose[d] substantial dangers to national interests," the court was unwilling to stop the newspapers from printing them. *New York Times*, 403 U.S. at 733 (White, J., concurring). As one district court found in *Religious Technology Center v. Lerma*, 897 F. Supp. 260, 262–63 (E.D. Va. 1995): "If a threat to national security was insufficient to warrant a prior restraint . . . the threat to plaintiff's . . . trade secrets is woefully inadequate."

More than woefully inadequate, Plaintiffs' purported justification for the prior restraint they seek is patently frivolous. Plaintiffs fear that Discovery's "competing documentary" will "impair[] or destroy[] Plaintiffs' first-to-market advantage" and prevent Plaintiffs from someday developing and releasing their own documentary. Dkt. No. 8 at *26. If a prior restraint will not issue in the face of a national security threat, it certainly should not issue to protect Plaintiffs' hypothetical right to someday make a documentary about a photograph of President Lincoln.

Plaintiffs' sole citation[3] to the contrary is to an unpublished decision from the Northern District of California that bears no factual resemblance to this case. In that case, the court granted a TRO against a defendant who signed and breached a

---

[3] Plaintiffs also cite a Ninth Circuit decision for the proposition that an injunction may issue against a statement of fact that is "so misleading that it falls beyond the First Amendment's protections." *San Antonio Cmty. Hosp. v. S. California Dist. Council of Carpenters*, 125 F.3d 1230, 1237 (9th Cir. 1997); *but see New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1083 (C.D. Cal. 2003) ("[A]llegations of falsity are insufficient to warrant prior restraint."). Plaintiffs do not elaborate on the purported relevance of that citation. In any event, Discovery's documentary Feature is plainly an expressive work protected by the First Amendment and Plaintiffs do not contend otherwise.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

confidentiality agreement to prevent the dissemination of information stolen from an association of abortion providers, on the grounds that such dissemination would lead to acts or threats of violence against those providers. *National Abortion Federation v. Center for Medical Progress*, 2016 WL 454082, *2 (N.D. Cal. Feb. 5, 2016).

Aside from the obvious and significant distinction that that case involved an actual threat of violence if the disclosure went forward (rather than a simply commercial dispute, as here), the key difference is that there, the defendant had entered into a contract with the plaintiff agreeing to injunctive relief to prevent any disclosure of confidential information. **Here, Discovery did not enter into any non-disclosure or other confidentiality agreement with Plaintiffs**. *See, e.g.*, Compl. at ¶¶71–78 (asserting claims for breach of contract as to all Defendants *except* Discovery); Swartz Decl., ¶6. Plaintiffs avoid admitting that fact outright in their *ex parte* application, vaguely referring to "several of the Defendants" as having entered into non-disclosure agreements when what they really mean is "several Defendants, but not Discovery." Dkt. No. 8 at *30. Discovery did not contractually agree to any restraint on its speech, and this Court should not order any. The request for a temporary restraining order should be rejected on this basis alone.

B. Prior Restraints on a Matter of Public Interest Are Impermissible Even in the Trade Secret Context.

The "virtually insurmountable barrier" to a Court issuing a prior restraint holds even with respect to the trade secret claims that Plaintiffs allege here. In *CBS, Inc. v Davis*, the Supreme Court overturned a preliminary injunction issued under the South Dakota Uniform Trade Secrets Act against the broadcasting of a news report that would reveal "confidential and proprietary practices and processes." 510 U.S. at 1316. The fact that the injunction in *Davis* involved trade secrets did not make the Supreme Court's prior restraint precedent any less relevant

to the Court's decision.

Other federal courts have consistently applied the same standard. *See, e.g.*, *Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745, 750 (E.D. Mich. 1999) (finding that although plaintiff had presented evidence of a violation of the Michigan Uniform Trade Secrets Act, "the Act's authorization of an injunction violates the prior restraint doctrine and the First Amendment"); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996) (refusing to enjoin publication of trade secrets improperly obtained in violation of a protective order, noting, "[t]he private litigants' interest in protecting their vanity or their commercial self-interest simply does not qualify as grounds for imposing a prior restraint.").

Importantly, this is not merely a private dispute between competitors over the disclosure of trade secrets. Discovery is a major media network set to publish a historically significant documentary. Discovery has no contractual or other confidential relationship with Plaintiffs. The documentary has received and will continue to receive major news coverage for what it uncovers about President Lincoln and his final hours. There can be little doubt that the public has a keen interest in a documentary about one of this nation's most significant historical moments (the assassination of President Lincoln) and the discovery of an historic artifact from that moment. While even prior restraints of purely private speech are still disfavored, there can be little doubt that a prior restraint in a matter of public interest is virtually never permitted. *See, e.g.*, *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1088 (C.D. Cal. 2003) (denying injunction as prior restraint and noting that "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection") (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985)).

## IV. PLAINTIFFS CANNOT MEET THE STANDARD FOR A PRELIMINARY INJUNCTION

Even if Plaintiffs were not seeking an unconstitutional prior restraint on speech (which they are), they still fail to establish the elements necessary for issuance of a preliminary injunction. Plaintiffs have made no attempt to show a likelihood of success on the merits *as to Discovery* (the target of the injunction). Plaintiffs cannot claim any irreparable injury, particularly when they slept on their rights for nearly nine months after learning of the upcoming documentary. The balance of hardships tilts sharply in favor of Discovery, which has invested substantial time and money in preparing for the debut of the Feature. Finally, the public interest strongly weighs against issuance of an injunction that will impair Discovery's First Amendment rights.

### A. Plaintiffs Cannot Show a Likelihood of Success on the Merits as to Discovery.

Plaintiffs' entire argument on the merits is based on a misleading conflation of Discovery with the other Defendants. Whether or not Plaintiffs have stated valid claims for trade secret misappropriation or breach of contract as to the other Defendants is irrelevant to the instant motion, which is directed *solely at Discovery*. As to Discovery, Plaintiffs' allegations of wrongdoing are all but nonexistent.

In their application, Plaintiffs merely argue that Discovery "is aware that the documentary inappropriately contains trade secret information," and that that knowledge gives rise to liability under the Defend Trade Secrets Act, 18 U.S.C. § 1836. Dkt. No. 8 at *21–22. Plaintiffs cite demand letters sent in January and April 2020 as supposed evidence that Discovery was put on notice of the misappropriation. But those letters do not identify with any specificity a single "trade secret" purportedly misappropriated or incorporated into the Feature. It is impossible that such vague and speculative letters could have put Discovery on notice of anything. *See, e.g.*, *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1  69, 79 (N.D. Cal. 2020) (finding that plaintiffs failed to state a trade secret
2  misappropriation claim where complaint made "conclusory assertion . . . devoid of
3  any factual substantiation of Defendants' knowledge"); *Bombardier Inc. v.*
4  *Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1182 (W.D. Wash. 2019) (the fact
5  that a company hired a competitor's employee who may have been in possession of
6  trade secrets "does not meet the knowledge requirement for trade secret
7  misappropriation").

8      Plaintiffs have not alleged (much less substantiated) a plausible claim against
9  Discovery, and so no temporary injunction should issue.

10     B.    <u>Plaintiffs Will Not Suffer Irreparable Harm.</u>

11     Plaintiffs cannot show "irreparable harm" after waiting to sue for almost nine
12 months. On January 21, 2020, Plaintiffs stated:

> We have learned through sworn testimony that [Plaintiffs'] Confidential Information has been disclosed for purposes of filming a production that we understand is to be aired on the Discovery Channel. The disclosure of this Confidential Information is a direct violation of the NDA and subjects the disclosing parties to possible damages and injunctions.

17 Compl., Ex. B.

18     This is an unambiguous and unequivocal statement that Plaintiffs knew the
19 factual basis for the instant injunction in January of this year. Such delay precludes
20 any finding of irreparable harm. *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir.
21 2015) (no irreparable harm where plaintiff waited several months after learning of
22 claim); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th
23 Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a
24 lack of urgency and irreparable harm."); *see also Wreal, LLC v. Amazon.com, Inc.*,
25 840 F.3d 1244, 1248 (11th Cir. 2016) (no irreparable harm in case of five-month
26 delay in seeking relief); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276–77 (2d Cir.
27 1985) (same for a nine-month delay).

28     Plaintiffs' unexplained delay in seeking relief speaks to the nature of their

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

supposed "harm," which is not "irreparable" or unquantifiable in the slightest. This is not a case in which Plaintiffs fear disclosure of their trade secrets to competitors who may steal their customers or gain a competitive advantage. In fact, Plaintiffs apparently believed that the non-Discovery defendants were misappropriating their trade secrets since as early as February 2018, and yet Plaintiffs never filed suit. Compl. at ¶ 38 (alleging that Defendant W. Braun "misappropriated" confidential information after one of her first meetings with Plaintiff Williamson). It was only after Discovery announced the specific date when its documentary would air that Plaintiffs sprang into action.

   This is because the real injury Plaintiffs allege is that, if Discovery's documentary airs, Plaintiffs will be unable to profit from a "competing documentary" (Dkt. No. 8 at *25:7) and to share the results of their investigation "in a way they were able to control" (*Id.* at *13:14). But diminution in the "market value of Plaintiffs' competing documentary" is a harm that is completely compensable through monetary damages. *See, e.g.*, *Puma SE v. Forever 21, Inc.*, 2017 WL 4771003, at *3 (C.D. Cal. June 2, 2017) (loss of market share can be "compensated with money damages"); *Nano-Second Tech. Co. v. Dynaflex Int'l*, 2011 WL 4502025, at *4 (C.D. Cal. Sept. 28, 2011) ("Plaintiff has not proffered any evidence to show how future loss of revenue and market share cannot be compensated with money damages."). "[T]o demonstrate irreparable harm, [a plaintiff] must do more than simply assert a theft of trade secrets—it must point to something specific about [defendant's] misconduct that is generating a type of harm that can't be measured or compensated via money damages." *TDBBS LLC v. Ethical Prod. Inc.*, 2019 WL 979944, at *4 (D. Ariz. Feb. 28, 2019); *accord Calence, LLC v. Dimension Data Holdings, PLC*, 222 F. App'x 563, 566 (9th Cir. 2007) (no presumption of irreparable harm in trade secret misappropriation cases).

   Plaintiffs merely assert, without evidence or explanation, that the supposed loss of their ability to make a competing documentary feature is not compensable

through monetary damages. That allegation is insufficient to establish irreparable harm and therefore cannot warrant an injunction.[4]

      C.     The Balance of Hardships Favors Discovery.

The injunction sought by Plaintiffs would cause a profound and immediate injury to Discovery that far outweighs any benefit to Plaintiffs. As a consequence of Plaintiffs waiting until the last minute to bring this *ex parte* application, Discovery has already expended significant time and money marketing and promoting the upcoming launch of the Feature. Declaration of Donna D'Alessandro ("D'Alessandro Decl."), ¶¶3-4. The Feature will be airing on primetime, this Sunday at 9 p.m. Eastern (6 p.m. Pacific), and is intended to anchor a new Discovery Channel anthology series following various investigative explorations of historical events and mysteries. Declaration of Laurie Goldberg ("Goldberg Decl."), ¶¶2–3.

As a result of both the importance of the new series to Discovery's brand and the newsworthy nature of the documentary's content, Discovery is promoting the Feature through dozens of high-profile news outlets as well as its affiliate networks. In the coming days before its debut, Discovery anticipates that the Feature will be covered in major outlets like *People Magazine*, the Associated Press, TV Insider, and dozens of other print media, online publications, radio programs, and podcasts. Among other accolades and favorable reviews for the Feature, Discovery understands that it will be featured in *People Magazine*'s coveted "People's Picks," as one of a handful of television programs the magazine will be promoting. Goldberg Decl., ¶4. This extensive media coverage is a one-time opportunity—If the Feature is delayed indefinitely, Discovery will not get a second chance with the

---

[4] Plaintiffs also make various assertions to the effect that an injunction is needed because the Feature is "factually inaccurate or misleading" (TRO, Dkt. 8 at *25:19), contains information "falsely attributed" to others (TRO, Dkt. 8 at *11:19) and "fail[s] to credit Plaintiffs' appropriately" (TRO, Dkt. 8 at *29:25). Such claims—to the extent legally actionable at all—are manifestly compensable in damages and cannot support a prior restraint.

above outlets, and both the Feature and Discovery's brand will suffer markedly as a result. Goldberg Decl., ¶5.

Indeed, the particular timeslot in which Discovery intends to release this new franchise is critical. Because the Feature is intended to anchor a new Discovery Channel anthology series, *Undiscovered*, Discovery has scheduled it to debut in a high-value time slot, immediately following the season finale of the hit franchise *Alaskan Bush People*. D'Alessandro Decl., ¶3. If Discovery were forced to pull or substitute out the Feature at the last minute (replacing it with a rerun or other lower-value broadcast), this would lead to a significant drop in viewership (i.e., lower ratings). This would also risk harming the brand to the extent that viewers were expecting a new, significant premiere, only to instead find a rerun or "encore" of a previous show. Discovery expects that viewership would decline that night by as much as 30–50% from the program leading into the 9 p.m. time slot. D'Alesandro Decl, ¶5. These losses, while difficult to quantify, could likely be at least $100,000 if not substantially higher. *Id*. This is in addition to the cost of advertising for the show, which is valued at approximately $4 million. *Id* at ¶4.

The Ninth Circuit has recognized that such losses from the delay of a broadcast constitute a significant hardship militating against an injunction. *Playmakers LLC v. ESPN, Inc.*, 376 F.3d 894, 898 (9th Cir. 2004). There is no sound reason to subject Discovery to this significant harm, particularly after Plaintiffs waited for nearly nine months to assert their claims.

### D. The Public Interest Weighs Against the Injunction.

There is a "significant public interest in upholding free speech principles." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (internal quotations omitted). Generally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotations omitted). Given that Plaintiffs seek a prior restraint on Discovery's protected speech, there is a strong public interest in

protecting Discovery's constitutional rights that supports denial of the injunction. Any minimal public interest in a commercial dispute between Plaintiffs and Defendants is far outweighed by the public interest in Discovery's protected speech, particularly in the context of the dissemination of a documentary of historical significance.

### E. If the Court Were to Grant an Injunction, Plaintiffs Must Post a Substantial Bond.

If the Court should decide to issue the extraordinary remedy of a prior restraint on Discovery's speech, Discovery requests that Plaintiffs be required to post a bond in an amount no less than $500,000. *See* FRCP 65(c) (providing that no preliminary injunction may be issued without requiring the party seeking the injunction to first post security "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained"). Contrary to Plaintiffs' suggestion, "[t]he instances in which a bond may not be required are so rare that the requirement is almost mandatory." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988).

The Feature is set to premiere during prime time—9:00 p.m. ET this Sunday, October 4. Discovery has promoted this special as the kickoff to its new documentary series, *Undiscovered*, which is to become a flagship of Discovery Channel's programming. Discovery has already expended significant sums promoting the Feature, including advertising spend valued at or around $4 million, and will lose substantial viewership and revenue if forced to preempt its premiere. D'Alessandro Decl., ¶¶3–5. Under these circumstances, a bond of no less than $500,000 is needed in the event a restraining order were improvidently granted.

## V. CONCLUSION

Plaintiffs' requested relief is as extraordinary as it is unwarranted. It is unconstitutional to issue a prior restraint on speech where the sole harm alleged is a financial loss based on a desire to make a competing documentary. Even aside from the constitutional deficiency of the request, the *ex parte* application utterly fails to establish any likelihood of success on the merits against Discovery, fails to identify any "irreparable" harm after Plaintiffs slept on their rights for months on end, and fails to account for the significant hardship to Discovery and the public interest. Plaintiffs' request should be denied.

DATED: September 29, 2020

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP

By: _____
AARON J. MOSS (SBN 190625)
JOSHUA M. GELLER (SBN 295412)
JILLIAN A. BERK (SBN 328439)
Attorneys for Defendant
DISCOVERY COMMUNICATIONS, LLC