UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
|---|---|---|---|
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**   ORDER DENYING PLAINTTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [8]

## I.   Introduction

On September 28, 2020, Plaintiffs Jerry A. Spolar and Tonny J. Williamson filed an application for a temporary restraining order ("TRO") against Discovery Communications, LLC ("Discovery"). Dkt. 8.  Plaintiffs ask the Court to enjoin the broadcast of a documentary set to air on October 4 on Discovery's television network and to compel Discovery to allow Plaintiffs to review the documentary for potential trade secret misappropriation.  Dkt. 8-4.  For the reasons articulated below, the Court DENIES Plaintiffs' TRO application.

## II.   Factual and Procedural Background

Plaintiffs have spent around twenty-five years seeking to authenticate a long-lost photograph that purportedly depicts Abraham Lincoln lying wounded on the night of his assassination.  Declaration of Jerry A. Spolar, Dkt. 8-3 ¶¶ 2, 4.  Spolar states that he purchased a half-interest in the photograph in 1996 and Plaintiffs together purchased the remaining interest in 2004.  *Id.* ¶ 3.

In their efforts to authenticate the photograph, Plaintiffs consulted with dozens of "forensic, authentication, technology, historical, and medical experts" and at least one person with personal knowledge.  *Id.* ¶¶ 14, 18.  Through these consultations, Plaintiffs accumulated "detailed, written reports, analyses, and conclusions, scientific analytical drawings, annotated images and overlays … and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

features thereon, experimental procedures and results, and related expert and consultant write-ups." *Id.* ¶ 15.  Plaintiffs had collaborators sign confidentiality or non-disclosure agreements, ensured the return of work product and materials, and communicated that their work should remain secret. *Id.* ¶¶ 8, 11-12.

When Plaintiffs were finally satisfied that the photograph was authentic, they sought to make a documentary about their work. *Id.* ¶ 21.  Plaintiffs were connected with Whitny Braun ("W. Braun"), who had relevant experience, and her father James Braun ("J. Braun"), who is a firearms historian. *Id.* ¶¶ 23-24.  W. Braun was affiliated with Unrealistic Ideas, LLC, a documentary production company. *Id.* ¶ 24.

On February 16, 2018, Plaintiffs gave a detailed presentation about their decades of work to the Brauns and to Archie Gips, President of Unrealistic. *Id.* ¶¶ 25-28.  Plaintiffs obtained non-disclosure agreements from the Brauns and Gips. *Id.* at ¶ 26.  Meetings about the project were arranged with representatives from National Geographic and the History Channel. *Id.* ¶¶ 29-30, 39.  Plaintiffs obtained non-disclosure agreements from the network representatives. *Id.*  National Geographic and the History Channel turned down the project, and Unrealistic "pulled the plug" in August of 2018. *Id.* ¶¶ 38, 41.

Plaintiffs saw signs throughout 2018 and 2019 that W. Braun was doing independent work relating to the photograph, relying on information Plaintiffs believed to be covered by their non-disclosure agreement.  Early in their working relationship, W. Braun sought verification of a list of Plaintiffs' experts and posted some of Plaintiffs' materials to a website. *Id.* ¶¶ 33-34, 36.  Plaintiffs responded by admonishing W. Braun about her confidentiality obligations. *Id.* ¶¶ 34, 36.  W. Braun (and unknown others) also began communicating with Plaintiffs' experts both before and after Unrealistic represented it was dropping the project. *Id.* ¶¶ 35, 37, 42, 49.

From conversations with their experts, Plaintiffs began to suspect that W. Braun was working on a documentary about the photograph with Discovery. *Id.* ¶ 47.  Plaintiffs sent a series of cease-and-desist letters: first to W. Braun and Unrealistic on August 2, 2019, *id.* ¶ 45; Ex. D, then to W. Braun with a courtesy copy to Discovery on January 21, 2020, *id.* ¶ 48; Ex. E, and finally on April 3, 2020, to a producer at Discovery who had attended a meeting with Plaintiffs during his prior employment with the History Channel, *id.* ¶ 51; Ex. F.  The only response Spolar describes is to this final letter, which simply denied that Boyle was involved in any project like the one Plaintiffs described. *Id.* ¶ 51; Ex. F.

Plaintiffs' suspicions proved correct.  On September 14, 2020, Plaintiffs learned that Discovery would be airing a documentary about the photograph on October 4. *Id.* ¶ 52; Ex. G, Dkt. 8-3.  In an

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
|---|---|---|---|
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

article posted to its website, Discovery describes the documentary, entitled *The Lost Lincoln,* as "follow[ing] professional authenticator Dr. Whitny Braun as she leads an investigation to determine whether or not a newly discovered photograph could be the 131st and final image of the president following his fatal shooting in 1865." *Id.* at 2.

Discovery has invested significant resources into broadcasting *The Lost Lincoln* in its currently scheduled slot. Discovery set aside the valuable Sunday primetime slot for the broadcast. Declaration of Laurie Goldberg, Dkt. 14-2 ¶¶ 2-3; Declaration of Donna D'Alessandro, Dkt. 14-3 ¶ 3. Discovery has promoted the documentary through dozens of networks, print and online publications, radio programs, and podcasts. Goldberg Decl. ¶ 4. Advertising costs are estimated at $ 4 million. D'Alessandro Decl. ¶ 4. *The Lost Lincoln* is the first title in the network's new investigative anthology series, *Undiscovered*. Goldberg Decl. ¶ 2; D'Alessandro Decl. ¶ 2.

Plaintiffs filed their complaint on September 25, 2020. Dkt. 1. The complaint named as Defendants Discovery, Unrealistic, Piece of Work Productions, LLC, Gips, W. Braun, and J. Braun. *Id.* It asserts claims for violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831 *et seq.*, against all Defendants; for breach of contract against Unrealistic, Gips, W. Braun, and J. Braun; and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, against all Defendants. *Id.*

Plaintiffs filed an ex parte application for a temporary restraining order ("TRO") on September 28, just six days before *The Lost Lincoln* was set to air. Dkt. 8. The application seeks a TRO enjoining Discovery from broadcasting *The Lost Lincoln*, requiring Discovery to provide Plaintiffs with a copy of *The Lost Lincoln*, and setting a briefing schedule for Plaintiffs to raise particularized objections documentary over a three-week period. Dkt. 8-4 ("Proposed Order"). Discovery filed an opposition on September 29. Dkt. 14.

### III. Discussion

#### a. Prior Restraint

##### i. Legal Standard

"The term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander*

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

*v. United States*, 509 U.S. 544, 550 (1993) (quoting *Nimmer on Freedom of Speech* § 4.03 (1984)). "Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints." *Id.*

"Prior restraints on speech present some of the 'most serious and the least tolerable infringement' on free speech rights." *Cuviello v. City of Vallejo*, 944 F.3d 816, 831 (9th Cir. 2019) (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)). "Subsequent civil or criminal proceedings, rather than prior restraints, ordinarily are the appropriate sanction for calculated defamation or other misdeeds in the First Amendment context." *CBS, Inc. v. Davis*, 510 U.S. 1315, 1318 (1994) (Blackmun, J., granting stay of injunctive relief). "Any prior restraint on expression [is reviewed] with a 'heavy presumption against its constitutional validity." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (citations omitted). A party seeking a prior restraint "carries a heavy burden of showing justification for the imposition of such a restraint." *Id.* "The gagging of publication has been considered acceptable only in 'exceptional cases.'" *Davis*, 510 U.S. at 1317 (citation and quotation marks omitted).

One "recurring theme" in prior restraint cases is a failure to accord "requisite procedural safeguards." *Alexander*, 509 U.S. at 552. "The special vice of a prior restraint is that communication will be suppressed … before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973). "[T]he danger of a prior restraint, as opposed to [an] ex post … action, is precisely that making predictions ex ante as to what restrictions on speech will ultimately be found permissible is hazardous and may chill protected speech." *Latino Officers Ass'n, New York, Inc. v. City of New York*, 196 F.3d 458, 465 (2d Cir. 1999). Some speech restrictions may constitute impermissible prior restraints when imposed as interim relief but remain constitutional when imposed following a final adjudication. *See Alexander*, 509 U.S. at 552 (distinguishing seizure of obscene materials on a finding of probable cause from forfeiture after criminal conviction); *Pittsburgh Press Co.*, 413 U.S. at 390 (distinguishing final order prohibiting publication of gender-specific employment columns from interim relief); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1084 (C.D. Cal. 2003) (quoting *Kramer v. Thompson*, 947 F.2d 666, 676 (3d Cir. 1991)) (while "allegations of falsity are insufficient to warrant prior restraint … 'once a jury has determined that a certain statement is libelous, it is not a prior restraint for the court to enjoin the defendant from repeating that statement.'").

### ii. Application

*The Lost Lincoln* is speech protected by the First Amendment and by the prior restraint doctrine.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

*See Goldblum v. NBC*, 584 F.2d 904 (9th Cir. 1978) (Kennedy, J.) (applying prior restraint doctrine to a television "docu-drama" about a fraud scheme); *Hunt v. NBC, Inc.*, 872 F.2d 289, 294-95 (1989) (citation omitted) ("[M]otion pictures enjoy first amendment protection even though they are designed to entertain, and are produced and exhibited for private profit."). While Plaintiffs assert that "misleading" speech is exempt from the prior restraint doctrine, Dkt. 8, at 22 (citing *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1237 (9th Cir. 1997)), they do not identify what statements in the broadcast will be misleading.

*The Lost Lincoln* also constitutes speech on a matter of public concern. *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 466 (1995) (lectures on history could count as speech on matters of public concern). "[P]rior restraints of … speech regarding matters of public concern are often impermissible." *Microsoft Corp. v. U.S. Dep't of Justice*, 223 F. Supp. 3d 887, 905 (W.D. Wash. 2017); *see also New.Net, Inc.*, 356 F. Supp. 2d at 1087-88 ("[T]he Court recognizes that case law [on prior restraint] draws some distinction between public and private speech….").

"[A] takedown order of a film of substantial interest to the public is a classic prior restraint of speech." *Garcia v. Google*, 786 F.3d 733, 747 (9th Cir. 2015) (en banc). The prior restraint doctrine even protects filmmakers from being compelled by a court to produce their work prior to broadcast. *Goldblum*, 584 F.2d at 907 (a district court's "interven[tion] in the editorial process by ordering an official of the broadcasting company to produce a film just before its scheduled broadcast … [was] an inherent threat to expression, one that chills speech").

Plaintiffs argue that the prior restraint doctrine does not protect a party who has bargained away First Amendment rights by contract. Dkt. 8, at 21-22. However, it is undisputed that Discovery, the only party against whom injunctive relief is presently sought, is not a party to a non-disclosure or confidentiality agreement with Plaintiffs. Dkt. 8-4; Dkt. 1 ¶¶ 71-78 (complaint does not assert breach of contract against Discovery); Declaration of Howard Swartz, Dkt. 14-1 ¶ 6.

Whether and how the prior restraint doctrine applies to protectible trade secrets – especially those covering matters of public concern – remains murky. In *CBS, Inc. v. Davis*, Justice Blackmun granted a television network's application to stay an injunction prohibiting a broadcast that would allegedly disclose a meat packing company's trade secrets. 510 U.S. at 1318; *see also Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745, 753 (E.D. Mich. 1999). However, it is well recognized that the prior restraint doctrine is routinely relaxed in the field of intellectual property. *See Smolla & Nimmer on*

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

*Freedom of Speech* § 15:60 ("[C]ourts have often exhibited a blind spot for normal prior restraint and preliminary injunction standards when it comes to enforcement of copyright interests."); *see, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001); *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 n.11 (9th Cir. 1997). Further complicating the analysis, unlike the injunctive relief contemplated in many prior restraint cases (including the influential Pentagon Papers case), injunctive relief here would be authorized by the Defend Trade Secrets Act. 18 U.S.C. § 1836(b)(3)(A); *cf. New York Times Co. v. United States*, 403 U.S. 713, 720 (1971) (Douglas, J., concurring) ("There is … no statute barring the publication by the press of the material which the Times and the Post seek to use.").

Given this ambiguity, the Court will not withhold relief solely because the proposed injunction would constitute a prior restraint. Moreover, the Supreme Court has made clear that prior restraints are permissible in some circumstances. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (citation and quotation marks omitted) ("[P[rior restraints are not unconstitutional *per se*."); *Nebraska Press Ass'n*, 427 U.S. at 570 ("This Court has … consistently rejected the proposition that a prior restraint can never be employed."). Plaintiffs' arguments in favor of an injunction should therefore be analyzed to determine whether this is an exceptional case warranting a prior restraint.

The Court recognizes its obligation not to "g[i]ve short shrift to the First Amendment values at stake" in Plaintiffs' request for injunctive relief, especially where the legal basis for the injunction is "thin." *Garcia*, 786 F.3d at 747. Therefore, the Court's analysis of the *Winter* factors is informed by an extra layer of First Amendment scrutiny. Alongside the familiar *Winter* factor analysis, the Court will consider whether Plaintiff brings an "exceptional case[] … where the evil that would result from [broadcast] is both great and certain and cannot be mitigated by less intrusive measures." *CBS, Inc.*, 510 U.S. at 1317 (citations omitted).

    **b.  *Winter* Factors**

        **i. Legal Standard**

The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile &*

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

*Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *see Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.,* 240 F.3d 832, 839 n.7 (9th Cir. 2011).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit employs the "serious questions" test, which states that "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (citation omitted).

### ii. Application

#### A. Likelihood of Success on the Merits

The likelihood of success on the merits is "the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citations and quotation marks omitted).

#### a. Trade Secrets

Under the Defend Trade Secrets Act, "a plaintiff must allege (1) that it is the owner of a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that it was damaged by the defendant's actions." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880 (N.D. Cal. 2018).

"A plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'" *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)). "The plaintiff 'should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons … skilled in the trade." *Id.* (quoting *Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989)). "The Ninth Circuit has rejected the use of 'catchall' language, holding that such language is insufficiently specific 'because it does not *clearly refer* to tangible trade secret material." *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1115 (N.D. Cal. 2016) (emphasis in

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

original). While the Defend Trade Secrets Act is of recent vintage, this older principle remains good law. *See Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *3 (N.D. Cal. 2018) ("The elements of a trade secret misappropriation claim under the DTSA are substantially similar to those under older state statutes."); *see*, *e.g.*, *Calendar Research LLC v. StubHub, Inc.*, 2020 WL 4390391, at *5 (C.D. Cal. 2020); *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020) (citation omitted).

> Plaintiffs allege that *The Lost Lincoln* misappropriates the following trade secrets:
>
> > "the compilation of a confidential list of dozens of medical, forensic, and authentication experts; detailed reports, analyses, and conclusions; scientific analytical drawings; annotated images and overlays of the Lincoln Ambrotype and features thereon; experimental procedures and results; related expert and consultant write-ups; handwritten notes, annotated figures and images, and detailed notes of Plaintiffs' interactions with their team of collaborators; and various duplication methods used to create images of the Lincoln Ambroype to enable more detailed photogrammetric analyses."

Dkt. 8, at 9-10. This list of broad, general terms does not describe any piece of information with sufficient particularity for the Court to determine that it is a protected trade secret as distinct from "matters of general knowledge in the trade or of special persons who are skilled in the trade." *Imax Corp.*, 152 F.3d at 1164-65. This generality frustrates the Court's ability to determine the likelihood that *The Lost Lincoln* will use or disclose Plaintiffs' confidential information. It could be that *The Lost Lincoln* displays, for example, some of the very duplicate photographs that Plaintiffs' experts made under confidentiality agreements with Plaintiffs. It could also be that *The Lost Lincoln* uses or discloses only independently reproduced methods or analyses that would be familiar to any person in the field of photographic authentication. *See Loop AI Labs*, 195 F. Supp. 3d at 1111 ("[T]rade secret law protects the right to maintain the confidentiality of facts, not ideas."). Without specificity as to what information Plaintiffs seek to protect, the Court cannot even begin to analyze whether the information is likely to play a role in *The Lost Lincoln* – sight unseen. *See Calendar Research*, 2020 WL 4390391, at *4 (quoting *X6D Ltd. v. Li-Tek Corps. Co.*, 2012 WL 12952726, at *1 (C.D. Cal. 2012)) ("[U]nless the plaintiff engages in a serious effort to pin down the secrets a court cannot do its job.").

      These deficiencies raise deeper concerns in the context of the "First Amendment values" at issue in Plaintiffs' request for injunctive relief. *Garcia*, 786 F.3d at 747. On this limited record, the Court would be required to speculate as to the contents of *The Lost Lincoln* and the circumstances of its production. Before a final adjudication, a plaintiff's evidentiary record is less developed and a

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

defendant's opportunities to contest the plaintiff's claims are far more limited. The prior restraint doctrine counsels against preliminary guesswork at the peril of a defendant's First Amendment rights. *See Latino Officers Ass'n*, 196 F.3d at 465 ("[T]he danger of a prior restraint, as opposed to [an] ex post … action, is precisely that making predictions ex ante as to what restrictions on speech will ultimately be found permissible is hazardous and may chill protected speech."). Therefore, the Court does not find that Plaintiffs have demonstrated a likelihood of success on their trade secrets claim.

### b. Breach of Contract

Plaintiffs have not brought a breach of contract claim against Discovery. Dkt. 1 ¶¶ 71-78. Although Plaintiffs discuss the merits of this claim in their application, Dkt. 8, at 7-8, the Court does not view it as relevant to the *Winter* analysis.

### c. UCL

The California Uniform Trade Secrets Act ("CUTSA"), "provides the exclusive civil remedy for conduct calling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret." *Alta Devices, Inc.*, 343 F. Supp. 3d at 888 (quoting *Waymo LLC v. Uber Tech., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017); *see* Cal. Civ. Code § 3426.7. "It therefore supersedes claims—including [UCL] claims—based on the same nucleus of facts as trade secret misappropriation." *Id.* "At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Id.*

Plaintiffs' trade secrets and UCL claim are based on the very same factual allegations – that Defendants misappropriated the information related to authenticating the photograph that they had sought to keep confidential. Dkt. 1 ¶¶ 79-85; Dkt. 8, at 13-14. Because Plaintiffs point to no facts supporting a theory of recovery likely to fall outside the scope of CUTSA preemption, the Court concludes at this stage that Plaintiffs' UCL claims are unlikely to succeed on the merits. *Id.*; *see also Top Agent Network, Inc. v. Zillow, Inc.*, 2015 WL 7709655, at *6 (N.D. Cal. 2015) (citation and quotation marks omitted) ("If there is no material distinction between the wrongdoing alleged in a CUTSA claim and that alleged in a different claim, the CUTSA preempts the other claim.").

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

### B. Likelihood of Irreparable Harm

"A preliminary injunction may issue only upon a showing that irreparable injury is *likely* in the absence of an injunction." *VidAngel, Inc.*, 869 F.3d at 865 (citation and quotation marks omitted).

Because the Court concluded above that Plaintiffs have not demonstrated a likelihood of success on the merits of their trade secrets claim, the Court need not reach Plaintiffs' assertion that misappropriation "almost always" constitutes irreparable harm, Dkt. 8, at 15, or that loss of control of a trade secret constitutes irreparable harm, *id.* at 16. Without a likelihood of misappropriation, Plaintiffs cannot demonstrate likelihood of irreparable harm based on misappropriation.

While Discovery argues that Plaintiffs' decision to abstain from filing suit until a week before broadcast precludes a finding of irreparable harm, Dkt. 14, at 10-11, that inference is not established by the record. Plaintiffs sent three cease-and-desist letters to individuals whom they suspected of misappropriating their confidential information between August 2, 2019 and April 3, 2020. Spolar Decl. ¶¶ 45-51. They filed suit just two weeks after learning of the upcoming broadcast. *Id.* ¶ 52. While earlier litigation may seem advisable in hindsight, it is far from clear that Plaintiffs knew enough before the broadcast was announced to commence suit.

However, Plaintiffs have failed to show that their claims cannot be remedied through monetary relief. Without a showing of nonmonetary injuries or that money damages cannot be obtained, purely economic harms are not irreparable. *See Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (citation omitted) ("Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation."); *see also California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (economic harm may be irreparable where plaintiffs "will not be able to recover monetary damages"). Plaintiffs' primary asserted injuries are monetary. Plaintiffs claim loss of competitive advantage for their own documentary, and loss in value of their ownership interest in the photograph. Dkt. 8, at 14-15. Although these damages are economic, Plaintiffs have not explained or provided evidence that damages cannot be calculated or recovered.

While Plaintiffs also point to loss of goodwill or reputational harm, they provide no specific evidence that otherwise available future business opportunities will likely be lost. *See Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (holding that a single complaint was insufficient evidence of irreparable harm based on damage to goodwill and reputation).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

The prior restraint doctrine gives the irreparable harm factor special salience. Because the First Amendment disfavors prospective relief prohibiting speech in all but exceptional cases, a court should be mindful of the heavy burden on a party seeking a prior restraint before concluding that asserted injuries cannot be remedied by less intrusive, retrospective remedies. *CBS, Inc.*, 510 U.S. at 1317-18. Given the apparent viability of monetary remedies and considerable uncertainties about what, if any, confidential information *The Lost Lincoln* will disclose, Plaintiffs fail to meet their heavy burden to show irreparable harm at this stage.

### C. Balance of the Equities

"Before issuing a preliminary injunction, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *VidAngel, Inc.*, 869 F.3d at 866 (citation and quotation marks omitted).

Plaintiffs devoted thousands of hours and hundreds of thousands of dollars to their authentication efforts over 25 years. Spolar Decl. ¶¶ 5-6. Without an injunction, they may lose immediate recognition for their work on a national broadcast – and the immediate payout such a broadcast could bring. However, if the broadcast proceeds, Plaintiffs are not precluded from seeking to set the record straight about their authentication efforts in any medium. Moreover, should they prevail on the merits, a damages award could remedy their lost economic opportunity.

For its part, Discovery has set aside a valuable Sunday primetime slot, spent $4 million on marketing the program, and seeks to use this first installment in their new investigative anthology series to generate excitement for future titles. D'Alessandro Decl. ¶¶ 2-4. An injunction would frustrate these efforts. *See Playmakers LLC v. ESPN, Inc.*, 376 F.3d 894, 898 (9th Cir. 2004) (similar evidence supported finding that balance of equities favored television network).

More importantly, even a temporary delay to Discovery's broadcast would constitute irreparable harm because it would operate as a prior restraint on Discovery's speech. *Cuviello*, 944 F.3d at 832 (citation omitted) ("Even if that freeze is only temporary, the loss or threatened infringement upon free speech rights 'for even minimal periods of time[] unquestionably constitutes irreparable injury.'"). With First Amendment values at stake, the balance of the equities factor weighs against injunctive relief.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-08837-SVW-MAA | Date | 10/2/2020 |
|---|---|---|---|
| Title | *Jerry A. Spolar et al. v. Discovery Communications, LLC et al.* | | |

### D. Public Interest

"[T]he court must pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *VidAngel*, 869 F.3d at 867 (citation and quotation marks omitted).

The Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (citation and quotation marks omitted). "[O]rdering an official of [a] broadcasting company to produce a film just before its scheduled broadcast so that it could be examined" is a form of "prepublication censorship [that] is an inherent threat to expression, one that chills speech." *Goldblum*, 584 F.2d at 907. "It is a fundamental principle of the first amendment that the press may not be required to justify or defend what it prints or says until after the expression has taken place." *Id.* Because an injunction under these circumstances would run afoul of that principle, the public interest favors Discovery.

### iii. Conclusion - *Winter* Factors

Plaintiffs have not met their burden to show that any of the *Winter* factors favor injunctive relief, much less the heavier burden to show entitlement to a prior restraint. Therefore, weighing the factors together, the Court will deny Plaintiffs' TRO application.

### IV. Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's application for a TRO.

IT IS SO ORDERED.

|  | : |
|---|---|
| Initials of Preparer | PMC |