BUCHALTER
A Professional Corporation
WILLMORE F. HOLBROW III (SBN: 169688)
    wholbrow@buchalter.com
MATTHEW L. SEROR (SBN:  235043)
    mseror@buchalter.com
SEAN M. CASEY (SBN: 179641)
    scasey@buchalter.com
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA  90017
Telephone: 213.891.0700

BUCHALTER
A Professional Corporation
DYLAN WISEMAN (SBN: 173669)
    dwiseman@buchalter.com
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Tel: (415) 227-3546

Attorneys for Plaintiffs JERRY A. SPOLAR
and TONNY JILL WILLIAMSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY A. SPOLAR, an individual; and TONNY JILL WILLIAMSON, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> UNREALISTIC IDEAS, LLC,  a Delaware limited liability company; PIECE OF WORK PRODUCTIONS, LLC, a California limited liability company; ARCHIE GIPS, an individual; WHITNY BRAUN, an individual; JAMES BRAUN, an individual; and DOES 1 through 25, <br><br> Defendants. | Case No. 2-20-cv-8837 SVW (MAAx) <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> **1)  BREACH OF NON-DISCLOSURE AGREEMENTS;** <br> **2)  BREACH OF CONTRACT - ARTIST HOLDING AGREEMENT;** <br> **3)  BREACH OF IMPLIED IN FACT CONTRACT;** <br> **4)  FRAUD;** <br> **5)  UNFAIR COMPETITION; AND** <br> **6)  UNJUST ENRICHMENT** <br><br> **<u>DEMAND FOR JURY TRIAL</u>** |

This lawsuit arises from Defendants' theft of Plaintiffs' ideas and creative

concepts for a television program about Plaintiffs' work of over 24 years to obtain,

authenticate, and establish the provenance of the 131st and last known photographic image of President Abraham Lincoln, which was taken on Lincoln's death bed after he was shot by John Wilkes Booth (the "Lincoln Program").  Plaintiffs communicated their concept and the information necessary to produce the Lincoln Program to Defendants under the protection of Non-Disclosure Agreements and with the Defendants' express and implied agreement that Defendants would not disclose, divulge or exploit Plaintiffs' ideas and concepts without compensating Plaintiffs and without Plaintiffs' consent.  Instead, Defendants fraudulently informed Defendants that their concept was valueless and that no television networks were interested in producing a program based on Plaintiffs' concept.  In violation of their agreements with Plaintiffs, Defendants then secretly exploited Plaintiffs' concept by producing a program that aired on the Discovery Network on October 4, 2020 entitled "Undiscovered: The Lost Lincoln," using Plaintiffs' concept but without paying Plaintiffs a penny.

## JURISDICTION & VENUE

1.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the matter in controversy exceeds $75,000.

2.     This Court has general personal jurisdiction over Defendants, as Defendants reside in this judicial district and do business in this judicial district, the claims asserted herein arose in this judicial district, and this Court has long arm jurisdiction over Defendants pursuant to California Civil Procedure §410.10 et seq.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial portion of the events or omissions giving rise to the claims alleged herein occurred in the Central District of California.

## THE PARTIES

4.     Plaintiff Tonny Jill Williamson ("Williamson") is an individual and a resident of St. Augustine, Illinois.

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

5.      Plaintiff Jerry A. Spolar ("Spolar") is an individual and a resident of Putnam, Illinois.

6.      Defendant Unrealistic Ideas, LLC ("Unrealistic") is a limited liability company organized and existing under the laws of the state of Delaware with a principal place of business of 901 West Alameda Avenue, Suite 102, Burbank, California 91506.  Unrealistic is qualified to do business in the state of California and Plaintiffs are informed and believe, and on that basis allege, that Unrealistic operates and conducts business in this judicial district.

7.      Defendant Piece of Work Productions, LLC ("PWP") is a limited liability company organized and existing under the laws of the state of California with a principal place of business of 901 West Alameda Avenue, Suite 102, Burbank, California 91506.  PWP is qualified to do business in the state of California and Plaintiffs are informed and believe, and on that basis allege, that PWP operates and conducts business in this judicial district.  Plaintiffs are informed and believe, and thereon allege, that PWP is a wholly owned subsidiary of defendant Unrealistic.

8.      Defendant Whitny Braun ("W. Braun") is an individual who, upon information and belief is a resident of Downey, California.  Plaintiffs are informed and believe, and thereon allege, that W. Braun is, and at all relevant times has been, an employee and agent of defendants Unrealistic and PWP, and, in doing the acts herein described and referred to, was acting in the course and within the scope of her authority as agent and employee, and in the transaction of the business of the employment or agency. Unrealistic and PWP are, therefore, liable to Plaintiffs for the acts of W. Braun as herein alleged.

9.      Defendant James Braun ("J. Braun") is an individual who, based on Plaintiffs' information and belief is a resident of Downey, California. Plaintiffs are informed and believe, and thereon allege, that W. Braun is, and at all relevant times

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COMPLAINT**

has been, an employee and agent of defendants Unrealistic and PWP, and, in doing the acts herein described and referred to, was acting in the course and within the scope of his authority as agent and employee, and in the transaction of the business of the employment or agency. Unrealistic and PWP are, therefore, liable to Plaintiffs for the acts of J. Braun as herein alleged.

10.     Defendant Archie Gips ("Gips") is an individual who, based on Plaintiffs' information and belief is a resident of Los Angeles, California.  Plaintiffs are informed and believe, and thereon allege, that Gips is, and at all relevant times has been, the President of defendant Unrealistic, and an employee and agent of Unrealistic and PWP, and, in doing the acts herein described and referred to, was acting in the course and within the scope of his authority as agent and employee, and in the transaction of the business of the employment or agency. Unrealistic and PWP are, therefore, liable to Plaintiffs for the acts of Gips as herein alleged.

11.     Plaintiffs are informed and believe and thereon allege that Defendants DOES 1 through 25, inclusive, are other as of yet unidentified parties who have participated in and committed the wrongful acts alleged herein. The true names of Defendants 1 through 25 are presently unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint with their true names and capacities once ascertained.

12.     Plaintiffs are informed and believe, and thereon allege, that there exists, and at all times since the formation of PWP has existed, a unity of interest and ownership between Defendants W. Braun, J. Braun, Gips, and Unrealistic and Defendant PWP, such that any individuality and separateness between Defendants W. Braun, J. Braun, Gips, and Unrealistic and Defendant PWP has ceased, and Defendant PWP is the alter ego of Defendants W. Braun, J. Braun, Gips, and Unrealistic in that Defendant PWP is, and at all times herein mentioned was, a mere shell, instrumentality, and conduit through which Defendants W. Braun, J. Braun,

Gips, and Unrealistic carried on their television production business, exercising complete control and dominance of such business to such an extent that any individuality or separateness of Defendant PWP and Defendants W. Braun, J. Braun, Gips, and Unrealistic does not, and at all times since the formation of PWP did not, exist.

13.     Plaintiffs are informed and believe, and thereon allege, that adherence to the fiction of the separate existence of PWP as an entity distinct from Defendants W. Braun, J. Braun, Gips, and Unrealistic would permit an abuse of the limited liability company privilege and would sanction fraud or promote injustice in that Defendants W. Braun, J. Braun, Gips, and Unrealistic would be permitted to continue their unjust exploitation of Plaintiffs' Lincoln Program concept and to shelter and conceal the unjustly obtained proceeds thereof.

14.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant hereto each of the Defendants was the agent, employee, alter-ego, affiliate, officer, director, manager, and/or principal of the other Defendants and was at all times relevant hereto acting within the course and scope of such agency relationship, employment, alter-ego relationship or affiliation.

15.     Plaintiffs are informed and believe, and based thereon allege, that each Defendant actively participated in, or subsequently ratified, each of the acts and conduct alleged herein with full knowledge of all the facts and circumstances attendant thereto, including the rights of the Plaintiffs and the damages sustained by Plaintiffs as a result of the acts and conduct alleged herein.

## FACTUAL BACKGROUND

16.     Plaintiffs are the owners of an ambrotype photograph that is believed to be a previously unknown photograph of Abraham Lincoln, the 16th president of the United States ("Lincoln Ambrotype"). An ambrotype is a type of photograph employed in the 1850s and 1860s, which is taken on glass, sometimes ruby glass,

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

and uses a light-sensitive silver colloid emulsion spread on the glass to capture and preserve a photographic image thereon.

17.     There are only 130 known and authenticated photographs of President Lincoln. The Plaintiffs' Lincoln Ambrotype is the 131st, and was taken the night of April 14, 1865, as President Lincoln lay mortally wounded after he had been shot by John Wilkes Booth.

18.     Plaintiff Spolar acquired the Lincoln Ambrotype on December 8, 1996.  Since that time Plaintiffs have spent thousands of hours and hundreds of thousands of dollars authenticating the Lincoln Ambrotype and establishing its provenance.  Plaintiffs have consulted, worked with, and hired dozens of experts around the United States to examine forensically and authenticate the Lincoln Ambrotype and its historical provenance, developing an extensive network of forensic, authentication, technological, historical, and medical experts who executed non-disclosure agreements ("NDAs") in favor of Plaintiffs.  Plaintiffs' work product included detailed reports, and analyses, scientific analytical drawings, annotated images and overlays of the Lincoln Ambrotype and features thereon, experimental procedures and results, and related expert and consultant write-ups. Plaintiffs also commissioned experts to create images of their Lincoln Ambrotype using various duplication technologies to enable detailed analyses of various photogrammetric and other aspects of the Lincoln Ambrotype, and commissioned their experts to create a duplicate copy of the Lincoln Ambrotype using photographic techniques identical to those used on April 14, 1865, when the original ambrotype was created.

19.     Plaintiffs were diligent and careful to ensure that all those who came into contact with them and the Lincoln Ambrotype understood that Plaintiffs intended to keep their work confidential. Before meaningfully discussing their work or the Lincoln Ambrotype with any third party, Plaintiffs insisted that each such

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COMPLAINT**

party execute a NDA and/or a confidential work-for-hire agreement. Plaintiffs' experts and consultants signed and agreed to abide by their respective NDAs and/or confidential work-for-hire agreements, and to deliver all work product to the exclusive custody, possession, and control of Plaintiffs.

20. Among the experts with whom Plaintiffs worked, and who executed NDAs and/or related agreements in favor of Plaintiffs, are: Mark Osterman ("M. Osterman"), an expert in nineteenth century photographic techniques and authentication; (ii) France Osterman, ("F. Osterman"), an expert in nineteenth century photographic techniques and authentication; (iii) Michael Hagar ("Hagar"), an expert in museum quality printing of old photographs; and (iv) Stanley Burns ("S. Burns"), a medical expert.

21. Plaintiffs spent over 20 years and hundreds of thousands of dollars investigating the Lincoln Ambrotype, assembling and organizing these materials, and creating the concept for the Lincoln Program.

## DEFENDANTS' THEFT OF THE LINCOLN PROGRAM

22. In early 2018, Plaintiffs began to pitch their Lincoln Program concept to television studios, producers, and their representatives. In or about February, 2018, Plaintiffs were referred to W. Braun, the daughter of firearms historian and gunsmith J. Braun. W. Braun represented to Plaintiffs that she had an existing relationship with Unrealistic, a documentary film production company.

23. On February 16, 2018, Plaintiffs met with Unrealistic representatives W. Braun, J. Braun, and Gips, the President of Unrealistic, in Los Angeles, California, and presented their creative ideas and concept for the Lincoln Program. In connection with their presentation Plaintiffs provided the Unrealistic representatives with detailed information regarding their authentication of the Lincoln Ambrotype, and the identities of certain of their authenticating experts including M. Osterman, F. Osterman, Hagar, and S. Burns.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

7

**FIRST AMENDED COMPLAINT**

24.     Prior to the February 16, 2018 presentation, W. Braun, J. Braun, and Gips represented to Plaintiffs that they, personally, and Unrealistic would maintain the confidentiality of Plaintiffs' concept and work product related to the Lincoln Program project, including the identities of the experts consulted with and retained by Plaintiffs in connection therewith, and that they would not use or disclose such information without Plaintiffs' consent.

25.     Also prior to the presentation occurring during the February 16, 2018 meeting, W. Braun, J. Braun, and Gips, signed NDAs in favor of Plaintiffs, true and correct copies of which are attached hereto as Exhibits A – C, respectively. Plaintiffs further informed W. Braun, J. Braun, and Gips that each of their authenticating experts had agreed to maintain the confidentiality of their work on the Lincoln Program project, and had signed NDAs and/or work-for-hire agreements agreeing to maintain the confidentiality of their work with respect to the Lincoln Program project.

26.     On February 16, 2018, Plaintiffs further presented their ideas and concept for the Lincoln Program, via video conference, to W. Braun, J. Braun, Gips, and to representatives of National Geographic, including National Geographic's executives, Igal Svet ("Svet"), and Tim Pastore.  All of the National Geographic representatives agreed to protect the confidentiality of Plaintiffs' information.  The National Geographic representatives expressed strong interest in producing the Lincoln Program.

27.     Plaintiffs communicated their ideas and creative concepts for the Lincoln Program concept to W. Braun, J. Braun, Gips, Unrealistic, and Svet pursuant to the following terms:

    (a) That Plaintiffs' disclosure of their ideas and concepts was strictly confidential;

(b) That W. Braun, J. Braun, Gips, Unrealistic, and Svet would not disclose, divulge or exploit Plaintiffs' ideas and concepts without compensation and without obtaining the Plaintiffs' consent; and

(c) That, by accepting the Plaintiffs' disclosure of the Lincoln Program concept, W. Braun, J. Braun, Gips, Unrealistic, and Svet accepted and agreed to abide by the foregoing terms.

28.     Also on February 16, 2018, Plaintiffs Williamson and Spolar and Unrealistic entered into identical written agreements titled: Unrealistic Ideas, LLC Artist Holding Agreements ("Artist Holding Agreement"), a true and correct copy of which signed by Williamson is attached hereto as Exhibit D.  The Artist Holding Agreements required Plaintiffs to work exclusively with Defendants without compensation, and provide, *inter alia*, that "[t]he parties …  agree to work together to develop the [Lincoln Program] Project and set up with a Network" (Artist Holding Agreement, ¶ 1), and that "[f]ees for [Plaintiff Williamson] will be negotiated in good faith upon sale of Project to Cable or Primetime Network ("collectively, "Network")."  *Id*., ¶ 3.

29.     On or about February 20, 2018, Plaintiffs received an email message from Defendant W. Braun asking for verification of a typed list of Plaintiffs' experts and consultants, which W. Braun alleged Plaintiff Williamson had given to her, which was not true.  Rather, W. Braun had misappropriated the information from Plaintiffs' materials during the Los Angeles visit. Williamson expressly reminded W. Braun of the signed NDA, demanded return of the materials, and reminded W. Braun of her obligation not to contact Plaintiffs' experts without Plaintiffs' permission. W. Braun refused to return the list.

30.     Shortly before March 6, 2018, Defendants W. Braun, J. Braun, and Gips represented to Plaintiffs that National Geographic was not interested in the Lincoln Program project.

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

31.     Prior to June 1, 2018, W. Braun, J. Braun, and Gips proposed a meeting to present Plaintiffs' Lincoln Program project to then History Channel executive producers Sean Boyle ("Boyle") and Kristen Burns ("K. Burns") in June 2018.  Prior to meeting with the History Channel, Unrealistic's representatives W. Braun and J. Braun represented in writing that the proposed History Channel project was worth "7 figures."

32.     On or about May 30, 2018, J. Braun called Plaintiff Williamson numerous times, and asserted by text message that the proposed deal with History Channel was worth "7 figures," meaning millions of dollars. A true and correct copy of this text message is attached hereto as Exhibit E (message labeled "3").

33.     Also on or about May 30, 2018, W. Braun also texted Plaintiff Williamson that Sean Boyle of History Channel would green-light a seven figure production budget upon seeing the presentation. A true and correct copy of this text message is attached hereto as Exhibit F (see message labeled "79").

34.     On June 1, 2018, Plaintiffs and Unrealistic representatives W. Braun, Gips, and Paul Sadowski ("Sadowski") presented Plaintiffs' Lincoln Program concept to History Channel representatives Boyle and K. Burns. Plaintiffs obtained signed NDAs from each of these History Channel representatives and Sadowski before presenting their Lincoln Program project. True and correct copies of the Boyle, K. Burns, and Sadowski NDAs are attached hereto as Exhibits G, H, and I, respectively. Plaintiffs communicated their ideas and creative concepts for the Lincoln Program concept to W. Braun, Gips, Sadowski, Boyle and K. Burns pursuant to the following terms:

(a) That Plaintiffs' disclosure of their ideas and concepts was strictly confidential;

(b) That W. Braun, Gips, Sadowski, Unrealistic, History Channel, Boyle and K. Burns would not disclose, divulge or exploit Plaintiffs' ideas and

concepts without compensation and without obtaining the Plaintiffs' consent; and

(c) That, by accepting the Plaintiffs' disclosure of the Lincoln Program concept, W. Braun, Gips, Sadowski, Unrealistic, History Channel, Boyle and K. Burns accepted and agreed to abide by the foregoing terms.

35.    Plaintiffs' presentation of their Lincoln Program concept to the History Channel was well-received, and the History Channel representatives stated that History Channel wanted to proceed with Plaintiffs' Lincoln Program project.

36.    Despite Unrealistic's representative J. Braun's prior written representation that the History Channel project was worth "7 figures," within days following the meeting with the History Channel, Defendants attempted to deprive Plaintiffs of the value of their Lincoln Program concept by offering to purchase all of Plaintiffs' rights in and to the Lincoln Program for $2,000. Plaintiffs rejected this unreasonable offer.

37.    Plaintiffs are informed and believe, and thereon allege, that following their unsuccessful attempt to purchase Plaintiffs' rights in the Lincoln Program Project for a fraction of their worth, Defendants proceeded to simply steal the Lincoln program concept and Plaintiffs' work product related to the Lincoln Program project, and to produce the Lincoln Program without Plaintiffs' consent and without compensating Plaintiffs.

38.    On or about August 6, 2018, Defendants Unrealistic, Gips, W. Braun, and J. Braun represented to Plaintiffs that the History Channel was not interested in the project, and that the Lincoln Program Project had no commercial value. Unrealistic falsely represented to Plaintiffs in writing that Gips and Unrealistic had "pulled the plug" on the Lincoln Program Project.

39.    Plaintiffs are informed and believe, and thereon allege, that despite Defendants' representations regarding purported lack of interest in and value of the

BUCHALTER
A Professional Corporation
Irvine

**FIRST AMENDED COMPLAINT**

Lincoln Program project, Defendants proceeded with the project.  Plaintiffs are further informed and believe that in or about August, 2018, Defendants Unrealistic, Gips, W. Braun, and J. Braun formed PWP as a vehicle for the production of a television program embodying and exploiting Plaintiffs' Lincoln Program concept and utilizing Plaintiffs' work product.

40.     Plaintiffs are informed and believe, and thereon allege, that in violation of their duties of confidentiality, Gips, J. Braun, W. Braun, Unrealistic, and PWP, and other agents of Defendants, began contacting Plaintiffs' experts and collaborators and working with them to produce a television program embodying and exploiting Plaintiffs' Lincoln Program concept, without notifying Plaintiffs.

41.     Plaintiffs are informed and believe that, unbeknownst to Plaintiffs, during October 2018 Boyle left The History Channel and moved to The Discovery Channel in an executive producer role. Plaintiffs are further informed and believe, and thereon allege, that in May 2019 Svet left National Geographic and joined The Discovery Channel, also in an executive producer role, to work with at the Discovery Channel with Boyle.

42.     Plaintiffs are informed and believe, and thereon allege, that in violation of her duty of confidentiality, on or about August 18, 2018, W. Braun posted confidential information regarding the Lincoln Program project online. Plaintiffs are further informed and believe that W. Braun continued to make unauthorized contact with Plaintiffs' confidential experts, including, without limitation, M. Osterman, F. Osterman, Hagar, and S. Burns, and to work with such experts in the production of a television program embodying Plaintiffs' Lincoln Program concept, including the filming of one or more of Plaintiffs' experts.

43.     Other than disclosures pursuant to NDAs, Plaintiffs' experts and collaborators were known only to Plaintiffs.  Plaintiffs are informed and believe that Defendant W. Braun used the list of Plaintiffs' experts that she had stolen from

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

the February 17, 2018 meeting to contact Plaintiffs' experts, in violation of Defendants' representations to and agreements with Plaintiffs.

44.     As a result of W. Braun's improper activities Plaintiffs sent a cease and desist letter dated August 2, 2019 to Defendants Unrealistic and W. Braun, a true and correct copy of which is attached hereto as Exhibit J.  Defendants Unrealistic and W. Braun failed to respond to the letter

45.     Plaintiffs are informed and believe, and thereon allege, that Defendants continued to secretly contact and to work with Plaintiffs' experts, including, without limitation, M. Osterman, F. Osterman, Hagar, and S. Burns, in the production of a television program embodying Plaintiffs' Lincoln Program concept, in violation of their representations to and agreements with Plaintiffs.  Plaintiffs are further informed and believe that W. Braun gained the trust and confidence of Plaintiffs' experts and induced them to violate their NDAs and related agreements in favor of Plaintiffs by, among other things, offering monetary or other inducements and/or falsely representing that W. Braun was working with Plaintiffs on a book deal, when in fact W. Braun was stealing the Lincoln Program concept and using Plaintiffs' experts, including at least M. Osterman, F. Osterman, Hagar, and Burns, to create a television program to be aired on the Discovery Channel.

46.     On or about January 21, 2020, Plaintiff caused another cease and desist letter to be sent to W. Braun, a true and correct copy of which is attached hereto as Exhibit K.  Again this letter was ignored.

47.     Plaintiffs are informed and believe, and on that basis allege, that Boyle and Svet had moved to Discovery, and worked with the Defendants to produce a television program embodying Plaintiffs' Lincoln Program concept and work product, in continuing violation of Plaintiffs' rights. Consequently, Plaintiffs caused another cease and desist letter dated April 3, 2020 to be communicated to Boyle at Discovery, a true and correct copy of which is attached hereto as Exhibit L.

48. Defendants succeeded in their unlawful plan to steal the Lincoln Program from Plaintiffs. On September 14, 2020, Discovery announced the airing of documentary purportedly created by Defendants and titled "Discovery Presents Hidden Photo of Lincoln" or "Undiscovered: The Lost Lincoln," focused on the Lincoln Ambrotype, starring W. Braun (the "Discovery Program"). W. Braun and Gips were Executive Producers of the Discovery Program. The production was broadcast on October 4, 2020 on The Discovery Channel.

49. The Discovery Program was created by Defendants in violation of their agreements with Plaintiffs.

50. The broadcast of the October 4, 2020 documentary created by Defendants has caused irreparable harm to the Plaintiffs' property and the value thereof. The broadcast also falsely attributes W. Braun with having come up with the idea of the Lincoln Program and with conducting the research to authenticate the Lincoln Ambrotype, causing further damage and harm to Plaintiffs.

## **FIRST CLAIM FOR RELIEF**
### **(Breach of Non-Disclosure Agreements)**
### **(Against All Defendants)**

51. Plaintiffs repeat and incorporate by reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

52. On or about the noted dates in Exhibits A – C, Plaintiffs and Defendants Unrealistic, Gips, W. Braun, and J. Braun, entered into NDAs pursuant to which Unrealistic, Gips, W. Braun, and J. Braun agreed to restrict their use and exploitation of Plaintiffs' Confidential Information, as defined therein, regarding the Lincoln Program project (the "NDAs"). *See* Exhibits A - C.

53. Pursuant to the NDAs, Defendants Unrealistic, Gips, W. Braun, and J. Braun were prohibited from using for their own benefit the concept and work product created by and owned by Plaintiffs, and disclosing and sharing information

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COMPLAINT**

disclosed to them by the Plaintiffs regarding the Lincoln Program.  The Agreements, among other prohibitions, specifically provided that Defendants:

    a.  "Shall not disclose or permit access to Confidential Information;

    b.  Shall take all steps necessary to protect the secrecy of the Confidential Information;

    c.  Not use the … Confidential Information;

    d.  Immediately notify … of any unauthorized disclosure; and

    e.  Fully cooperate with the Disclosing Party in any effort undertaken … to enforce its rights."

54.    Pursuant to the NDAs, Defendants expressly acknowledged that monetary damages may not be a sufficient remedy for any breach or threatened breach of the NDAs, and that in addition to all other remedies available, Plaintiffs shall be entitled to specific performance, injunctive and other equitable relief as a remedy for any breach or threatened breach of the NDAs.

55.    Defendants Unrealistic, Gips, W. Braun, and J. Braun breached their contractual obligations to Plaintiffs by disclosing, divulging, using and exploiting Plaintiffs' Confidential Information to produce the Discovery Program without obtaining the Plaintiffs' consent.

56.    Plaintiffs have performed all of their obligations under the NDAs, except any that have been excused.

57.    As a proximate result of Defendants' breaches, Plaintiffs have suffered and will continue to suffer damages in excess of the minimum jurisdictional amount of this Court, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs pray for judgment as hereafter set forth.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

### (Breach of Contract - Artist Holding Agreement)

### (Against Defendant Unrealistic)

58.     Plaintiffs repeat and incorporate by reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

59.     On February 16, 2018, Plaintiffs Williamson and Spolar and Defendant Unrealistic entered into the Artist Holding Agreements, Exhibit D hereto.

60.     Pursuant to the Artist Holding Agreements, Defendant Unrealistic agreed to work together with Plaintiffs to develop the Lincoln Program project and sell the project to a cable or prime time television network, and, further, that fees for Plaintiffs would be negotiated in good faith upon the sale of the Lincoln Program project to a cable or prime time network.  See, Exhibit D, ¶¶ 1, 3.

61.     Defendant Unrealistic breached its contractual obligations to Plaintiffs by failing to work with Plaintiffs in good faith to develop the Lincoln Program project and sell the Lincoln Program project to a cable or prime time television network, and by failing to negotiate fees for Plaintiffs in good faith.  Instead, Unrealistic disclosed and exploited Plaintiffs' ideas and concepts without compensation to Plaintiffs and for Unrealistic's own benefit.

62.     Plaintiffs have performed all of their obligations under the aforementioned agreement, except any that have been excused.

63.     As a proximate result of Defendant's breaches, Plaintiffs have suffered and will continue to suffer damages in excess of the minimum jurisdictional amount of this Court, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiff prays for judgment as hereafter set forth.

/ / /

/ / /

BUCHALTER
A Professional Corporation
Irvine

**FIRST AMENDED COMPLAINT**

## **THIRD CLAIM FOR RELIEF**

## **(Breach of Implied in Fact Contract)**

## **(Against All Defendants)**

64.     Plaintiffs repeat and incorporate by reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

65.     At the instance and request of Defendants Unrealistic, Gips, W. Braun, and J. Braun, Plaintiffs communicated to said Defendants their ideas and creative concepts for the Lincoln Program concept pursuant to the following terms, which were fully and clearly understood by said Defendants:

(a) That Plaintiffs' disclosure of their ideas and concepts was strictly confidential;

(b) That Defendants Unrealistic, Gips, W. Braun, and J. Braun would not disclose, divulge or exploit Plaintiffs' ideas and concepts without compensation and without obtaining the Plaintiffs' consent; and

(c) That, by accepting the Plaintiffs' disclosure of the Lincoln Program concept, Defendants Unrealistic, Gips, W. Braun, and J. Braun accepted and agreed to abide by the foregoing terms.

66.     Defendants Unrealistic, Gips, W. Braun, and J. Braun breached their contractual obligations to Plaintiffs by disclosing, divulging and exploiting Plaintiffs' ideas and concepts without compensation to Plaintiffs and without obtaining the Plaintiffs' consent.

67.     Plaintiffs have performed all of their obligations under the aforementioned agreement, except any that have been excused.

68.     As a proximate result of Defendants' breaches, Plaintiffs have suffered and will continue to suffer damages in excess of the minimum jurisdictional amount of this Court, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs pray for judgment as hereafter set forth.

## **FOURTH CLAIM FOR RELIEF**

## **(Fraud)**

## **(Against All Defendants)**

69.     Plaintiffs repeat and incorporate by reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

70.     On February 16, 2018, in Los Angeles California, Defendants W. Braun, J. Braun, and Gips, each acting on his or her own behalf and on behalf of Unrealistic, represented to Plaintiffs that they, personally, and Unrealistic would maintain the confidentiality of and not exploit Plaintiffs' Lincoln Program concept and Plaintiffs' work product related to the Lincoln Program project, and that they would not use or disclose such information without Plaintiffs' consent.

71.     The representations made by defendants were in fact false.  The true facts were that Defendants W. Braun, J. Braun, Gips, and Unrealistic intended to, and did, use, disclose and exploit Plaintiffs' Lincoln Program concept and Plaintiffs' work product related to the Lincoln Program project, including the identities of the experts consulted with and retained by Plaintiffs in connection therewith, without Plaintiffs' consent, in order to produce a competing television program for their own benefit and without compensation to Plaintiffs.

72.     Shortly before March 6, 2018, Defendants W. Braun, J. Braun, and Gips, each acting on his or her own behalf and on behalf of Unrealistic, represented to Plaintiffs that National Geographic was not interested in the Lincoln Program project.  On or about August 6, 2018, Defendants Unrealistic, Gips, W. Braun, and J. Braun, each acting on his or her own behalf and on behalf of Unrealistic, represented to Plaintiffs that the History Channel was not interested in the Lincoln Program project and that the Lincoln Program Project had no commercial value. Unrealistic further falsely represented to Plaintiffs in writing that Gips and Unrealistic had "pulled the plug" on the Lincoln Program Project. Such statements

18

**FIRST AMENDED COMPLAINT**

were not true and Defendants knew they were not true at the time they were made. Said Defendants suppressed, mislead and failed to reveal the fact that they intended to exploit Plaintiffs' Lincoln Program concept and Plaintiffs' work product to produce a television program embodying Plaintiffs' Lincoln Program concept and Plaintiffs' work product without Plaintiffs' knowledge or permission. Defendants' intent to surreptitiously steal the Lincoln Program concept and work product and mislead Plaintiffs regarding such intent, did in fact mislead Plaintiffs.

73. The misrepresentations, failures to disclose information, and suppressions of information made by Defendants were made with the intention to deceive and defraud Plaintiffs, and to induce Plaintiffs to act in reliance on these representations in the manner hereinafter alleged, or with the expectation that Plaintiffs would so act.

74. Plaintiffs, at the time these failures to disclose and misrepresentations occurred, were unaware of the true information that Defendants suppressed and failed to disclose. Had Plaintiffs been aware of the existence of the facts not disclosed by Defendants, Plaintiffs would not have, as they did, discontinued the development and production of the Lincoln Program, and discontinued seeking other investors and television producers with whom to undertake such efforts.

75. Plaintiffs' reliance was justified because Defendants had agreed not to unilaterally exploit the Lincoln Program and held themselves out as experienced producers of television documentaries with extensive knowledge of and experience in the development, production and marketing of television documentaries.

76. As a direct and proximate result of Defendants' intentional misrepresentations and suppression of facts as alleged herein, Plaintiffs have suffered and will continue to suffer damages in excess of the minimum jurisdictional amount of this Court, the exact amount to be determined at trial.

BUCHALTER
A Professional Corporation
Irvine

**FIRST AMENDED COMPLAINT**

77.     The aforementioned conduct of the Defendants was an intentional suppression of facts and deceit with the intention to deprive the Plaintiffs of property or legal rights or otherwise cause injury, and was despicable conduct that subjected the Plaintiffs to a cruel and unjust hardship in conscious disregard of the Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

**WHEREFORE**, Plaintiffs pray for judgment as hereafter set forth.

## FIFTH CLAIM FOR RELIEF

### (Unfair Competition)

### (Against All Defendants)

78.     Plaintiffs repeat and incorporate by reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

79.     California Business and Professions Code section 17200 prohibits and makes actionable "any unlawful, unfair or fraudulent business act or practice." Defendants engaged in unlawful business practices in that they induced W. Braun, J. Braun, Gips, Unrealistic, M. Osterman, F. Osterman, Hagar, and Burns to breach their contractual obligations to Plaintiffs.  Defendants further engaged in the unlawful business practice of passing off Plaintiffs' Lincoln Program concept, and Plaintiffs' work product created, organized and assembled in the authentication of the Lincoln Ambrotype, as their own, in violation of Civil Code § 17700(a)(1).

80.     As a direct and proximate result of Defendants' wrongful conduct as alleged above, Defendants' business acts or practices have caused injury in fact to Plaintiffs.  Among other things, Defendants' conduct, as alleged herein, has deprived Plaintiffs of the opportunity to maximize the value of their Lincoln Program concept and Plaintiffs' work product created, organized and assembled over 20 years of effort in the authentication of the Lincoln Ambrotype, by producing a competing documentary using and exploiting Plaintiffs' creative

BN 42883959v1

20

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

concept and work product.  Plaintiffs are entitled to relief, including disgorgement from Defendants for harm caused as a result of such business acts or practices.

81.  Defendants' acts of unlawful and unfair competition have also caused irreparable and incalculable injury to Plaintiffs, and to Plaintiffs' business and goodwill. Unless enjoined, Defendants' conduct likely will cause further irreparable and incalculable injury, for which Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs pray for judgment as hereafter set forth.

<u>**SIXTH CLAIM FOR RELIEF**</u>

<u>**(Unjust Enrichment)**</u>

<u>**(Against All Defendants)**</u>

82.  Plaintiffs repeat and incorporate by reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

83.  Defendants were unjustly enriched by their improper use and exploitation of Plaintiffs' Lincoln Program concept, and Plaintiffs' work product concerning the authentication of the Lincoln Ambrotype.

84.  At Plaintiffs' expense, Defendants received benefits arising from their improper use and exploitation of Plaintiffs' Lincoln Program concept, and Plaintiffs' work concerning the authentication of the Lincoln Ambrotype, which they otherwise would not have achieved, including monetary payments and the prestige, credit, and benefit associated with being the purported "first" to authenticate the Lincoln Ambrotype.

85.  Plaintiffs are entitled to recover the amount by which Defendants were unjustly enriched, in an amount in excess of the minimum jurisdictional amount of this Court, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs pray for judgment as hereafter set forth.

/ / /

/ / /

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs prays for judgment and order against each Defendant named herein, as follows:

1.      For an award of compensatory damages according to proof;

2.      For exemplary and punitive damages in an amount subject to proof at trial;

3.      For restitution and disgorgement of all compensation, profits, benefits and other remuneration which may have been obtained by Defendants as a result of their unlawful business acts or practices;

4.      For restitution of the amount by which defendants have been unjustly enriched;

5.      For injunctive relief including, but not limited to, a temporary restraining order, preliminary and permanent injunctions, and/or writ of possession requiring Defendants to return all of Plaintiffs' work product created, organized and assembled in the authentication of the Lincoln Ambrotype, and to prohibit defendants and their employees, agents, representatives, affiliates, co-conspirators, aiders and abettors and all persons and entities acting in concert with them from:

a.      Using, disclosing, divulging and/or exploiting Plaintiffs' Lincoln Program concept or any of Plaintiffs' work product created, organized and assembled in the authentication of the Lincoln Ambrotype;

b.      Destroying or concealing from Plaintiffs any of Plaintiff's work product created, organized and assembled in the authentication of the Lincoln Ambrotype;

6.      For prejudgment and post-judgment interest as authorized by law;

7.      For attorneys' fees and costs of suit herein as available by statute or otherwise;

1        8.     For such other and further relief as the Court may deem just and

2   proper.

3   DATED:  January 19, 2021          BUCHALTER
                                      A Professional Corporation
4

5

6                                     By:   */s/Willmore F. Holbrow III*
                                            WILLMORE F. HOLBROW III
7                                           DYLAN WISEMAN
                                            MATTHEW L. SEROR
8                                           SEAN M. CASEY
                                            Attorneys for Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BUCHALTER**
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COMPLAINT**

## **JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury on all issues so triable in this matter.

DATED:  January 19, 2021          BUCHALTER
                                   A Professional Corporation


                                   By:   */s/Willmore F. Holbrow III*
                                         WILLMORE F. HOLBROW III
                                         DYLAN WISEMAN
                                         MATTHEW L. SEROR
                                         SEAN M. CASEY
                                         Attorneys for Plaintiffs

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COMPLAINT**